**Alvin NEWSOME and Imajean Newsome, Appellants/Cross-Appellees,**

**v.**

**Robert C. BILLIPS, d/b/a Peter Fork Mining Company, Appellee/Cross-Appellant.**

Court of Appeals of Kentucky.

June 15, 1984.

Newsomes the sum of $800.00 for blasting damages. The question presented in the direct appeal is whether the trial court erred by limiting the recovery to $800.00. The Newsomes argue that the instructions were erroneous. The issue on the cross-appeal is whether Billips was entitled to a directed verdict at the close of the Newsomes' proof.

The complaint alleged that Billips had damaged rental property owned by the Newsomes due to blasting operations by his mining company. The Newsomes sought $20,000.00 in damages. Alvin Newsome testified that he constructed the house in 1972 for approximately $25,000.00. The damage consisted of "busted" concrete blocks and cracked mortar joints on the outside. He also testified that there was some damage to the inside walls and ceilings and one window. He estimated that he could repair the damage himself for $9,500.00. Newsome's other witnesses testified that the cost of repair would be $12,-500.00 and $10,875.00.

At the close of the Newsomes' case, Billips moved for a directed verdict because the Newsomes had failed to "show the fair market value of the house immediately before and after the alleged damages...." The court reserved ruling on the motion at that time, but ultimately denied the motion.

A builder, testifying for Billips, stated that the house could be "re-grouted and repainted" for a "little under a thousand dollars." Billips also introduced the testimony of two expert appraisers. Phillip Blackman stated that the fair market value before the blasting would have been $25,-500.00. When asked to state his opinion as to the fair market value immediately after the defects he answered as follows:

> I don't really—they have been repairs—quite a bit of repairs that had been done. As I said, Six Hundred ($600) dollars damage, I would have to say if there's any difference it would have to be the Six Hundred ($600) Dollars; but again, there were repairs already to the type of repair that I did; so I can't really give a before and after, Mr. May.

Charles E. Lowe, Lowe & Lowe, Pikeville, for appellants/cross-appellees.

Marrs Allen May, Stratton, May & Hays, Pikeville, for appellee/cross-appellant.

Before HOWERTON, LESTER and REYNOLDS, JJ.

HOWERTON, Judge.

The Newsomes appeal and Billips cross-appeals from a jury verdict and judgment in the Pike Circuit Court awarding the

After further questioning, he stated that the fair market value of the property at the time of the trial was $25,000.00.

The other expert appraiser was unable to attend the trial due to illness. The trial court permitted Billips to read to the jury an affidavit prepared by his counsel, containing the testimony which was expected to be elicited from the witness. The statement stressed the qualifications of the witness and the fact that he had made a "minute examination" of the property. The statement further indicated that the house was worth $25,000.00 immediately before the blasting and that its value was $24,200.00 immediately thereafter. The statement also indicated that the cost of repair of all defects would be between $600.00 and $800.00. We find no objection to this evidence in the record.

Both sides tendered instructions to the court, but the trial court used its own instructions. The trial court first instructed the jury on the question of liability. It then gave the following three instructions on damages:

INSTRUCTION NO. IA. The court instructs the jury that if the Plaintiffs' building can be reasonably repaired, the measure of damages the Plaintiffs are entitled to is the reasonable cost of repairs, but if repairs cannot be reasonably made, the measure of damages is the difference in the market value of the property before and after the injury. The test of whether property may reasonably be repaired is whether the cost of repair exceeds the difference in the market value before and after the injury, and if the cost of repairs of the building exceeds the difference in the market value of the property before and after injury, then such cost is manifestly unreasonable and the building may not be reasonably repaired at the expense of the Defendant in this case even though repair is technically possible.

INSTRUCTION NO. IB. If you find for the Plaintiffs in Instruction No. I, and you believe from the evidence that the building is readily repairable, then you should find for the Plaintiffs such sum in damages as you may believe from the evidence as will enable the Plaintiffs to restore said building to substantially as good a condition as it was before the injuries complained of, not to exceed the sum of Eight Hundred ($800.00) Dollars.

INSTRUCTION NO. IC. If you find for the Plaintiffs under Instruction No. 1, and you believe from the evidence that the building is not readily repairable, then you shall find for the Plaintiffs such sum in damages as you may believe from the evidence was the difference in the fair market value of the Plaintiffs' building immediately before said damages and immediately thereafter, not to exceed the sum of Eight Hundred ($800.00) Dollars, the amount proven in evidence.

The jury returned a verdict in favor of the Newsomes in the amount of $800.00. The Newsomes have appealed, and Billips has cross-appealed.

We will first consider the issue raised by the cross-appeal, which was whether Billips was entitled to a directed verdict at the close of the Newsomes' proof. It is clear that the evidence was sufficient to overcome such a motion. The proof for the Newsomes indicated that Billips had conducted blasting in the area at the time the house was damaged, that the house was in good condition prior to the blasting, that the blasting caused the damages, that the approximate value of the house prior to the damage was $25,000.00, and that the damages could be repaired for an amount between $9,500.00 and $12,500.00. The damages were less than the value of the improvements.

In order to sustain a motion for a directed verdict, the court must draw all fair and rational inferences from the evidence in favor of the party opposing the motion. A verdict should not be directed unless the evidence is insufficient to sustain the verdict. *Gregory v. Paducah Midstream Service*, Ky., 401 S.W.2d 40 (1966). The Newsomes' proof was based solely on the cost to cure by repair. They did not offer any direct proof of the difference in

the fair market value of their property immediately before and immediately after the alleged damages, but the fact that the only proof of the difference in the before and after values was to be less than their estimated cost of repair was not in issue. In the absence of evidence to the contrary, it may be presumed that the anticipated cost of repair would reduce the value by an equal amount. *State Property and Building Comm'n v. H.W. Miller Const. Co.,* Ky., 385 S.W.2d 211 (1964). The directed verdict was properly denied.

■ In Kentucky, the real measure of damages in a blasting case where the injury is partial or "temporary" is the reasonable cost of repair. *Island Creek Coal Co. v. Rodgers,* Ky.App., 644 S.W.2d 339 (1982). *See also Kentucky Stone Co. v. Gaddie,* Ky., 396 S.W.2d 337 (1965). However, repair is unreasonable when its cost exceeds the difference in the before and after values. The unreasonableness of the Newsomes' cost figures was brought into issue by Billips' proof of the diminished value. Any presumption the Newsomes might have enjoyed was eliminated by Billips' proof. The Newsomes offered nothing to counter it.

■ We are dealing with recovery for a tort and not an insurance contract which might allow for some costly restoration. The tort-feasor is responsible for the lesser of the cost to cure and the diminished value. The Restatement of Torts is generally consistent. It provides:

If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for

(a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,

(b) the loss of use of the land, and

(c) discomfort and annoyance to him as an occupant.

*Restatement (Second) of Torts,* § 929, at 544 (1977). The option for restoration is nevertheless limited by what is "reasonable."

An example of a situation with possible high cost and low loss might be a house with aluminum siding which gets some dents from flying rocks due to blasting. A substantial cost might be required to remove the dents, but the diminished value might be very little. The loss would be especially small, if the siding already had several dents from other causes.

We conclude that the instruction was a correct statement of the law, and that it was properly applied to the facts as they were proven at trial. The instruction was based on *Edwards and Webb Construction Co. v. Duff,* Ky.App., 554 S.W.2d 909 (1977). That case involved a total loss, but it also prevented the repair cost from exceeding the loss in value.

The law is clear enough. The problem in this case is with the proof and the development of the facts. The estimated cost to repair ranged from $600.00 to $12,500.00. The loss in value was essentially fixed at $800.00. The jury could have awarded damages between $600.00 and $800.00. The verdict of $800.00 was proper whether it was based on the jury's determination of a cost to repair or the actual loss in value as was proven.

The judgment of the Pike Circuit Court is affirmed.

All concur.