618 So.2d 874 (1993)
The ROMAN CATHOLIC CHURCH OF the ARCHDIOCESE OF NEW ORLEANS and United States Fidelity & Guaranty Company
v.
LOUISIANA GAS SERVICE COMPANY and Western Preferred Casualty Company.
No. 92-C-0071.
Supreme Court of Louisiana.
May 24, 1993.
*875 Leonard A. Young, Peter B. Hays, III, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for applicant.
William H. Howard, III, Sallye G. Webb, Phelps Dunbar, New Orleans, for respondent.
DENNIS, Justice.[*]
This case presents the question of what is the proper measure of damages when recovery is sought for the negligent damage to a building, when the property can be repaired or restored, the cost of replacing the property in its original condition is not disproportionate to the value of the property before the injury, there is reason personal to the owner for restoring the original condition and the owner has, in fact, made repairs fully restoring the property.

FACTS
On December 16, 1976, the Department of Housing and Urban Development (hereinafter referred to as "HUD"), in consideration for cancellation of a $3,300,000.00 promissory note, acquired ownership of the Villa D'Ames Apartment complex in Marrero, Louisiana. In 1977, HUD entered into an agreement with the Roman Catholic Church of the Archdiocese of New Orleans (hereinafter referred to as the "Archdiocese") to manage the Villa D'Ames complex. From 1977 to 1980 the complex, which provided federally subsidized housing to 200 low income families, was substantially renovated at a cost of approximately $3,000,000.00.
After managing the complex for almost five years, the Archdiocese agreed to purchase the property without public bid. The sale was effected in August 1981 for $1,700,000.00, subject to the resolutory condition that should the Archdiocese fail to continuously maintain the complex for low income rental for 200 families during the next fifteen years, the property would revert to HUD. The Archdiocese purchased the property on these terms in order to further its interest in providing housing for poor families affiliated with its newly placed parish church.
On the night of December 24, 1983, a fire occurred at the Villa D'Ames apartment complex. The complex consisted of 13 detached apartment buildings as well as an office/laundry building and a community building. The fire was restricted to building 3 of that complex.
At the time of the fire the actual owner of the complex was Villa D'Ames, Inc., a wholly-owned, non-profit subsidiary corporation of the Archdiocese. The property was insured by United States Fidelity and Guaranty Company, (hereinafter referred to as "USF & G"), with Villa D'Ames, Inc. as a named insured under the USF & G policy.
The defendant, Louisiana Gas Service Company (hereinafter referred to as "Louisiana Gas") supplied natural gas to the apartments in the complex. On the evening of December 24, 1983, there was a hard freeze, which caused a malfunction of the natural gas regulating equipment utilized by Louisiana Gas to supply gas to the apartment units. As a result of this malfunction, dangerous amounts of gas surged into the apartments, eventually causing the fire and resulting damages.
Suit was filed by Villa D'Ames, Inc., the Archdiocese, and USF & G against Louisiana Gas for recovery of the damages sustained as a result of the fire.
Prior to trial, Louisiana Gas acknowledged that it was legally liable for the damages sustained by plaintiffs as a result of the fire in question. The case went to trial solely to determine the quantum of damages. Regarding the only issue before this court, the trial court ruled that since *876 the cost of restoration exceeded the market value of the building before the damage, plaintiffs' recovery was limited to the amount expended to restore the building to its pre-fire condition reduced by depreciation. The plaintiffs appealed. The Court of Appeal affirmed, 592 So.2d 14 (La.App. 5th Cir.1991). We granted certiorari, 592 So.2d 1321 (1992).

ISSUE
The single issue presented is whether the lower courts erred in limiting plaintiffs' damages to replacement cost, less depreciation, rather than awarding the plaintiffs the full cost of restoration that had been reasonably incurred.

ANALYSIS
Every act of man that causes damage to another obliges him by whose fault it happened to repair it. La.Civ.Code art. 2315. One injured through the fault of another is entitled to full indemnification for damages caused thereby. Coleman v. Victor, 326 So.2d 344 (La.1976); Jordan v. Travelers Ins. Co., 257 La.995, 245 So.2d 151 (1971). In such a case, "[t]he obligation of defendant ... is to indemnify plaintiffto put him in the position that he would have occupied if the injury complained of had not been inflicted on him." Coleman v. Victor, supra, at 346, quoting, Lambert v. American Box Co., 144 La. 604, 613, 81 So. 95, 98 (1919). See also, Ayala v. Bailey Elec. Co. Inc., 318 So.2d 645 (La.App. 4th Cir.1975).
Consequently, "[w]hen property is damaged through the legal fault of another, the primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage...." Coleman v. Victor, supra, at 346. Accordingly, "the measure of damages is the cost of restoring the property to its former condition. In assessing damage to property, generally, courts have considered the cost of restoration as the proper measure of damage where the thing damaged can be adequately repaired." Id. at 346-47, citing Lambert v. American Box Co., supra; Hayward v. Carraway, 180 So.2d 758 (La.App. 1st Cir.1965), writ ref. 248 La.909, 182 So.2d 662 (1966). "[N]o mechanical rule can be applied with exactitude in the assessment of property damage under Article 2315." Coleman v. Victor, supra, at 347, citing Jordan v. Travelers Ins. Co., supra.
These basic precepts have been reaffirmed and strengthened indirectly by the Declaration of the Right to Property of our state constitution. Article I, § 4 of the Louisiana Constitution of 1974, in pertinent part, provides:
"Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property.... Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.... In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss."
Thus, our constitution does not simply require that the owner of condemned or damaged property be compensated with the market value of the property taken and severance damage to his remainder, but that he be "compensated to the full extent of his loss" and "placed in as good a position pecuniarily as [he] enjoyed prior to the taking." State v. Bitterwolf, 415 So.2d 196, 199 (La.1982), quoting State v. Constant, 369 So.2d 699, 702 (La.1979). Accordingly, justice, reason, and the principle of full reparation of Louisiana Civil Code article 2315 require that where an individual's property is damaged unlawfully by a tortfeasor for no good reason, he be compensated at least as fully as when his property is damaged by the state for a public purpose pursuant to the owner's obligation of citizenship to the community. See La. Civ.Code art. 2626.
In contrast with these fundamental principles, some jurisdictions have placed more restrictive limits on when an owner whose property has been tortiously damaged can recover the full cost to repair or restore. Although expressed in differing *877 ways, many of these courts essentially limit the owner's damage to the lesser of cost to repair and diminution in market value caused by the damage. See, e.g., Blanton & Co. v. Transamerica Title Ins. Co., 24 Ariz.App. 185, 188, 536 P.2d 1077, 1080 (1975); Charles v. Rueck, 179 Cal.App.2d 145, 146-48, 3 Cal.Rptr. 490, 491-92 (1960); Kirst v. Clarkson Constr. Co., 395 S.W.2d 487, 493-94 (Mo.Ct.App.1965); Newsome v. Billups, 671 S.W.2d 252, 253-55 (Ky.Ct. App.1984); Stony Ridge Hill Condominium Owners Ass'n v. Auerbach, 64 Ohio App.2d 40, 41, 48, 410 N.E.2d 782, 784, 788 (1979); Mozzetti v. City of Brisbane, 67 Cal.App.3d 565, 576, 136 Cal.Rptr. 751, 757 (1977). Other courts, although applying cost to restore as the appropriate measure of damages in all cases of reparable injury to property, use the fair market value of the property before the injury, rather than the diminution in value, as a ceiling on the damage award. See, e.g., Southern Indiana Gas & Electric Co. v. Indiana Ins. Co., 178 Ind.App. 505, 517, 383 N.E.2d 387, 395 (1978); "L" Invs., Ltd. v. Lynch, 212 Neb. 319, 321, 322 N.W.2d 651, 653 (1982); Stratford Theater, Inc. v. Town of Stratford, 140 Conn. 422, 424, 101 A.2d 279, 280 (1953). Some of our own courts of appeal have approved such limitations, including a rigid "cost of replacement, less depreciation," test, evoking this court's pointed admonitions that no mechanical rule can be applied with exactitude in the assessment of property damage under Article 2315 and that every case must rest on its own facts and circumstances. Coleman v. Victor, supra at p. 347 and nn. 4 and 5.
Recently, courts and commentators have criticized these types of simplistic tests which require the automatic application of limitations on an owner's recovery of the cost to restore or repair his damaged property. See generally, D. Dobbs, Handbook on the Law of Remedies § 5.1 (1973). "Such ceilings on recovery not only seem unduly mechanical but also seem wrong from the point of view of reasonable compensation. If the plaintiff wishes to use the damaged property, not sell it, repair or restoration at the expense of the defendant is the only remedy that affords full compensation. To limit repair costs to diminution in value is to either force a landowner to sell the property he wishes to keep or to make repairs partly out of his own pocket." Id. at 317. "[R]ules governing the proper measure of damages in a particular case are guides only and should not be applied in an arbitrary, formulaic, or inflexible manner, particularly where to do so would not do substantial justice." Myers v. Arnold, 83 Ill.App.3d 1, 38 Ill.Dec. 228, 233, 403 N.E.2d 316, 321 (1980). "Limiting the costs of repairs to the diminution in value of the property appears to fly in the face of [the rule requiring that the injured party be restored to his former position]. The diminution in value may be slight because the injury is slight as compared to the total property, as evidenced by this case. Undoubtedly, the breaking of some bricks and the bending of several windows may not result in reducing the overall value of an old warehouse, still capable of fulfilling its intended function even with broken bricks. Yet, should we therefore excuse the tortfeasor from any liability?" "L" Invs., Ltd. v. Lynch, 212 Neb. 319, 322 N.W.2d 651, 656 (1982). "`To hold that appellant is without remedy merely because the value of the land has not been diminished, would be to decide that by the wrongful act of another, an owner of land may be compelled to accept a change in the physical condition of his property, or else perform the work of restoration at his own expense.' "Heninger v. Dunn, 101 Cal. App.3d 858, 863, 162 Cal.Rptr. 104, 108 (1980), quoting Dandoy v. Oswald Bros. Paving Co., 113 Cal.App. 570, 572-73, 298 P. 1030, 1031 (1931).
In recognition of the need for a more flexible approach, particularly with respect to damages to immovable property, the Restatement (Second) of Torts provides, in pertinent part, that whenever there is injury to land, damages should include "the difference between the value of the land before the harm and the value after the harm, or at [the owner's] election in an appropriate case, the cost of restoration that has been or may be reasonably incurred...." Restatement (Second) of *878 Torts § 929 (1977). The official comment on this section indicates that (i) costs of restoration are ordinarily allowable as the measure of damages (ii) but that courts will use diminution in value when the cost of restoring the land to its original condition is "disproportionate" to the diminution in value(iii) "unless there is a reason personal to the owner for restoring the original condition." Id. § 929, comment b. In the latter case, the damages will ordinarily include the amount necessary for repairs, even though this amount might be greater than the total value of the property. Id.; C. Chomsky, Of Spoil Pits and Swimming Pools: Reconsidering the Measure of Damages for Construction Contracts, 75 Minn. L.Rev. 1445, 1481-82 (1991).
Increasingly, courts in Louisiana and elsewhere have articulated standards approximating the Restatement (Second) of Torts provisions. Reasons "personal to the owner" frequently are pointed to as justification for allowing high damage awards, often in excess of diminution in market value. See, e.g., Maloof v. United States, 242 F.Supp. 175, 183-85 (D.Md.1965); G & A Contractors, Inc. v. Alaska Greenhouses, Inc., 517 P.2d 1379, 1387 (Alaska 1974); Myers v. Arnold, 83 Ill.App.3d 1, 38 Ill. Dec. 228, 230, 233, 403 N.E.2d 316, 318, 321 (1980); Samson Constr. Co. v. Brusowankin, 218 Md. 458, 471, 147 A.2d 430, 438 (1958); Rector of St. Christopher's Episcopal Church v. McCrossan, 306 Minn. 143, 144, 150, 235 N.W.2d 609, 610, 613 (1975); Morris v. Ciborowski, 113 N.H. 563, 565, 311 A.2d 296, 297 (1973); Berg v. Reaction Motors Div., 37 N.J. 396, 405, 181 A.2d 487, 495 (1962); Adcock v. Rollins Protective Serv. Co., 1 Ohio App.3d 160, 160-61, 440 N.E.2d 548, 549 (1981); Anderson v. Bauer, 681 P.2d 1316, 1324 (Wyo.1984). See also Mayer v. McNair Transport, 384 So.2d 525 (La.App. 2d Cir.1980) (Finding of the jury, assessing the loss of a large, older, and well-kept home, inhabited by older couple for approximately 30 years, at a sum greater than the market value, was not in error); Fortson v. Louisiana Power & Light Co., 509 So.2d 743 (La.App. 3d Cir.1987) (No abuse of discretion in awarding full replacement cost with no deduction for depreciation for entertainment equipment destroyed by sudden power surge since equipment had a particular value to the plaintiff due to its appearance); Emerson v. Empire Fire and Marine Ins. Co., 387 So.2d 1238 (La.App. 1st Cir.1980), writ granted 392 So.2d 669, and amended to augment the award, 393 So.2d 691 (1981) (loss of experimental research records, which had no market value at all, but an "intrinsic value to the owner," are recompensable at the "actual value of the property to the person sustaining the loss," relying upon Lack v. Anderson, 27 So.2d 653 (La.App. 2d Cir.1946) and Mosely v. Sears, Roebuck and Co., 167 So.2d 408 (La.App. 1st Cir.1964)); French Jordan, Inc. v. Oilfield Sales & Service, 439 So.2d 523 (La. App. 1st Cir.1983) (Holding that depreciation should not be applied due to the particular nature of the damaged property); and historically relevant, Aetna Ins. Co. v. Palao, 263 So.2d 394 (La.App. 4th Cir.1972) (Awarding cost of restoration without deduction for depreciation because to prove depreciation would be very impractical under the circumstances); Hayward v. Carraway, 180 So.2d 758 (La.App. 1st Cir.1965) (awarding, due to the unique "historic, architectural and esthetic value," the full cost of restoring mantels vandalized in Belle Helene plantation when replacements could have been fashioned of salvaged materials); Lambert v. American Box Co., 144 La. 604, 81 So. 95 (1919) (Allowing recovery of a newly constructed "gallery" when the one destroyed was several years old); Ayala v. Bailey Elec. Co., Inc., 318 So.2d 645 (La.App. 4th Cir.), writ issued, 322 So.2d 770 (1975) and dismissed on joint stipulation (holding plaintiff entitled to the full cost of repairing her building damaged by defendant with no deduction for depreciation where the value of the property is not substantially enhanced by the repairs); Williams v. Gallagher Transfer & Storage Co., Ltd., 170 La.461, 128 So. 277 (1930) (Allowing recovery at the cost of replacement of a hand carved bedroom set with no deduction for depreciation where there was no ascertainable market value). The "personal reasons" usually are the owners' desires to enjoy and live in their homes, but *879 several courts have accepted "special reasons" related to the non-homestead use of property. See, e.g., Samson Constr. Co. v. Brusowankin, 218 Md. at 462, 147 A.2d at 432-33; Morris v. Ciborowski, 113 N.H. at 564, 311 A.2d at 298; Berg v. Reaction Motors Div., 37 N.J. at 399, 406, 181 A.2d at 489, 492; Adcock v. Rollins Protective Serv. Co., 1 Ohio App.3d at 160, 440 N.E.2d at 549; Anderson v. Bauer, 681 P.2d at 1324.
However, the courts often state that some limits exist to the amount that can be recovered: e.g., the repair must be "practical" and "reasonable," Heninger v. Dunn, 101 Cal.App.3d 858, 864, 162 Cal. Rptr. 104, 108 (1980); Rector of St. Christopher's Episcopal Church v. McCrossan, 306 Minn. at 145-46, 235 N.W.2d at 611; Adcock v. Rollins Protective Serv. Co., 1 Ohio App.3d at 160-61, 440 N.E.2d at 549; expenditures are allowable unless "wholly disproportionate to the value of the land," Myers v. Arnold, 83 Ill.App.3d at 6, 403 N.E.2d at 321; or "disproportionate to actual injury," Moulton v. Groveton Papers Co., 114 N.H. 505, 510, 323 A.2d 906, 911 (1974); or "economically wasteful," Board of County Commissioners v. Slovek, 723 P.2d 1309, 1316 (Colo.1986). But extensive damages are often awarded as cost of restoration. Morris v. Ciborowski, 113 N.H. at 564-65, 311 A.2d at 298-99 ($16,000.00 to replace trees); Berg v. Reaction Motors Div., 37 N.J. at 399-401, 181 A.2d at 491-92 ($25,605.00 for structural damage from jet engine testing although diminution in value was $3,700.00); G & A Contractors, Inc. v. Alaska Greenhouses, Inc., 517 P.2d at 1387 ($12,550.00 for restoring vegetation to a few acres of tract purchased for $4,000.00 per acre); Gross v. Jackson Township, 328 Pa.Super. 226, 227-28, 476 A.2d 974, 975-76 (1984) ($9,674.00 for replanting shrubs removed by construction in widening a road); Melton v. United States, 488 F.Supp. 1066, 1069, 1075 (D.D.C.1980) ($90,000.00 to complete a $40,000.00 restoration job); Trinity Church v. John Hancock Mut. Life Ins. Co., 399 Mass. 43, 44 n. 3, 502 N.E.2d 532, 533 n. 3, 536 (1987) ($3.6 million to repair structural damage to an historic church building even though church had no present intention to restore); C. Chomsky, supra at 1485-87.
In only a few cases have courts refused to award the full cost to restore because the expense was truly exorbitant. Heninger v. Dunn, 101 Cal.App.3d at 861, 866, 864, 162 Cal.Rptr. at 106, 109 ($241,257.00 to restore trees and undergrowth "manifestly unreasonable" in relation to land value which increased from $179,000.00 to $184,000.00 because defendant bulldozed unauthorized road on land); Maloof v. United States, 242 F.Supp. at 184-88 (cost to replace vegetation limited to $77,660.00 to approximate but not duplicate actual pre-existing condition); Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604, 608-09 (La.App. 1st Cir.1978), writ ref., 366 So.2d 575 (1979) (owners of one-eighth undivided interest in 550 acres of land injured by toxic waste limited in recovery to the value of their interest, $25,000.00, where cost of restoration sought was $170 million); C. Chomsky, supra at 1484-87.
The teachings of the cases approximating Restatement (Second) of Torts § 929 and its comments, when applied as flexible guides rather than as arbitrary formulae, tend to foster the same goals established by our Civil Code and state constitutional property damage principles, i.e., they tend to compensate the victim to the full extent of his loss and restore him to as good a position as he held prior to the damage. La.Civ.Code art. 2315; La.Const. 1974, Art. I § 4; Coleman v. Victor, supra. Accordingly, we conclude that, as a general rule of thumb, when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference between the value of the property before and after the harm. If, however, the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, unless there is a reason personal to the owner for restoring the original condition or there is a reason to believe that the plaintiff will, in fact, make the repairs, damages are measured *880 only by the difference between the value of the property before and after the harm. Consequently, if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building.
Applying these precepts, we decide that plaintiffs are entitled to recover from the defendants the full $232,677.00 cost of restoration that has been reasonably incurred. First, the cost of restoring the property in its original condition is not economically wasteful or disproportionate to the value of the property. The value of the apartment complex far exceeds the restoration cost. The complex was acquired by HUD at a cost of $3.3 million, renovated at a cost of $3.0 million, and sold to the Archdiocese for $1.7 million upon the condition that it maintain the complex for 200 poor families for 15 years. Despite the fact that the building destroyed by fire was separate from the other twelve buildings, it contained 16 family units and was a necessary and integral part of the 200 family low income rental project. Under such circumstances, the defendant is not entitled to a credit merely because the Archdiocese has acquired a substantially new unit, presumably with a longer life expectancy than the old. Plaintiff should not be required to finance in part the premature replacement of the housing unit when there is no assurance that this will add to the realizable value of the whole property to which it appertains. An award of full restoration costs might be inequitable in a case where the damaged part was scheduled for early replacement, long before the expiration of the useful life of the whole. Here, however, the damaged building evidently had the same useful life expectancy as the other units in the low rental housing complex. See United States v. Ebinger, 386 F.2d 557 (2d Cir.1967). Second, even if the foregoing reason did not exist, there is a reason personal to the owner for restoring the property to its original condition. The interest of the Archdiocese harmed by the fault of the defendant was not purely financial. The Archdiocese did not purchase the complex as a business investment with an eye towards speculation and does not hold the property solely for the production of income. Its object in acquiring and maintaining the facility was to provide housing for its low income parishioners. Moreover, the continuance of the Archdiocese's ownership and housing mission is conditioned upon its removal of the property from commerce and providing housing for 200 poor families during a fifteen year period. In choosing between the cost of repair measure and some other measure of damages, it is important to know how the property is used and what interest in it is asserted, so that the measure can be adopted that will afford compensation for any legitimate use that the owner makes of his property. See D. Dobbs, supra at § 5.1 p. 315. Finally, even in the absence of either of the foregoing reasons, the plaintiff in the present case is clearly entitled to recover the full cost of restoration because it has, in fact, made the repairs by replacing the building in its original condition.
For the reasons assigned, the judgments of the trial and appellate court are amended to award plaintiffs $232,677.00, instead of $125,338.50, as the reasonable cost of restoring the building. As amended, the judgments below are affirmed.
AMENDED AND AFFIRMED.
NOTES
[*] Cole, J., assigned to participate in the decision of this case argued prior to his retirement.