PLOTKIN, Judge,
concurs in part and dissents in part.
I concur with the majority in all respects except the deletion of mortgage payments in the sum of $28,036.35.
The majority reverses this award on the theory that the value of Frick’s occupancy off-sets the monthly mortgage payment. Further, the majority finds that she failed to produce sufficient evidence concerning the cost of repairing the defect.
In my view, once the majority found the City liable for the building defect, the plaintiff became entitled to damages for injury to her property. In this type of ease, quantification of damages is problematic. For this reason, when damages are insusceptible of precise measurement, much discretion shall be left to the court for reasonable assessment of damages. L.C.C. art. 1999. Coffin v. Board of Supervisors LSU, 620 So.2d 1354 (La.App. 2nd Cir.1993).
The evidence presented demonstrates that this single-family residence contained defects that rendered the property virtually unusable and unsellable. The trial court fashioned a remedy that was not unreasonable — restoration of the mortgage payments.
The Supreme Court in Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Co., 618 So.2d 874 (La.1993) addressed the problem of quantifying property damage. The court held that when an individual’s property is damaged by a tortfeasor for no good reason, he must be compensated at least as fully as when his property is damaged by the State for public purposes pursuant to the owner’s obligation of citizenship to the community. LSA-Const. art. 1, §■ 4; L.C.C. arts. 2315, 2626. The primary objective is to restore the property as nearly as possible to the state it was in immediately preceding the damage. Generally, when a person sustains property damage due to the fault of another, he is entitled to recover damages, including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference between the value of the property before and after the harm. Id. In choosing between cost of repair measure and some other measure of damages to the property, it is important to know both the use of the property and the plaintiffs interest in the property, so that the court may adopt the measure that will afford compensation for any legitimate use the owner makes of his property. Id.
Plaintiff has chosen not to seek restoration or repair costs. Considering the nature of the defect, it would obviously be impractical or economically unfeasible for the owner to invest further funds in a single residential home. The additional cost to repair a plumbing leak in a party wall that serves as a fire wall would not increase the value of her home and she was not required to repair the defect without assurance that it would add to the value of her property. Roman Catholic Church, 618 So.2d at 880.
Once Mrs. Frick rejected the option of repair, we must apply the precepts established by the Roman Catholic Church case. Under those precepts, the court should have evaluated how the property was used, and the interest asserted, and adopt a measure of damages that affords compensation for any legitimate use that the owner makes of his property.
Mrs. Frick used one-half the property as her personal residence. She was employed by the City for 20 years, and was a single mother raising her daughter. She borrowed the low-cost funds to purchase the property from Carruth Mortgage Corp., which was insured by the FHA and YA. After she discovered the plumbing leak in 1985, she sought financial and contractor’s assistance *1310 to repair the defect without success. The building contractor and seller were bankrupt. The mortgage company, FHA, and VA denied her requests for assistance. Unable to solve her building and financial problems, she discontinued monthly payments, the lender foreclosed, and Mrs. Frick was evicted from her home. Under these circumstances, and consistent with the theory espoused in the Roman Catholic Church case, the owner of damaged property should be compensated as nearly as possible to the state she occupied immediately prior to the damages.
Accordingly, I would award Mrs. Frick all of her monthly mortgage payments from the date she learned of the defect in June of 1985 until she discontinued payments. It would be inequitable to restore the damages, based on monthly mortgage payments, from the date of purchase. Alternatively, I would award her a lump sum to compensate her for the loss of use of her property which I value at $15,000.