STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

SANDRES J. GUIDRY, ET AL.

VERSUS

DWIGHT MANUEL, INC., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NUMBER 99-4287-G
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLIE COLOMBARO WOODARD
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billie Colombaro Woodard, and Michael G. Sullivan, Judges.

**AFFIRMED AS AMENDED.**

Gerald C. deLaunay
Post Office Box 53597
Lafayette, Louisiana 70505
(337) 237-8500
Counsel for
Plaintiffs/Appellees/Appellants:
    Cathy D. Guidry
    Guico Specialty Company, Inc.
    Sandres J. Guidry

Charles J. Foret
Briney & Foret
Post Office Drawer 51367
Lafayette, Louisiana 70505
(337) 237-4070
Counsel for Defendants/Appellants:
    Dwight Manuel, Inc.
    Maryland Casualty Insurance
    Company

John O. Kopynec
2436 E. Contour Drive
Baton Rouge, Louisiana 70809-1358
(225) 928-9135
Counsel for Defendant/Appellant:
    Maryland Casualty Insurance
    Company

Roy J. DiVincenti, III
Geraldine Fontenot Roberts
Lindsey J. Leavoy
Owen Arden Neff
Law Offices of Roy J. DiVincenti, III
2431 S. Acadian Thruway, Suite 300
Baton Rouge, Louisiana 70808
(225) 927-1333
Counsel for Defendant/Appellant:
    Maryland Casualty Insurance
    Company

Pride J. Doran
DiVincenti, Fontenot-Roberts & Doran
2014 W. Pinhook Road, Suite 701
Lafayette, LA 70508
(337) 235-7888
Counsel for Defendant/Appellant:
    Maryland Casualty Insurance
    Company

John H. Hughes
Allen & Gouch
Post Office Drawer 3768
Lafayette, Louisiana 70502-3768
(337) 291-1290
Counsel for Defendants/Appellees:
    MPW Construction, Inc.
    Acadiana Architects, LLC
    William P. Mills, III

David Shaw
Neal, Stephens & Grace
Suite 1060, One Lakeway Center
3900 North Causeway Boulevard
Metairie, Louisiana 70002
(504) 219-2009
Counsel for Defendant/Appellant:
    Maryland Casualty Insurance
    Company

James Allen Lochridge, Jr.
Voorhies & Labbe'
Post Office Box 3527
Lafayette, Louisiana 70502
(337) 232-9700
Counsel for Defendant/Appellee:
    Baldwin Redi-Mix, Inc.

Brent P. Frederick
Breazeale, Sachse & Wilson
Post Office Box 3197
Baton Rouge, LA 70521
(225) 387-4000
Counsel for: Defendant Appellee
Baldwin Redi-Mix, Inc.

William W. Koetting
410 Bertrand Drive
Lafayette, Louisiana 70506
Defendant/Appellee In Proper Person

WOODARD, Judge.

The Plaintiffs appeal the jury's determinations concerning fault allocation and damages. Defendant and third-party Plaintiff, Manuel, appeals the fault allocation, as well. We affirm the trial court's fault allocation but increase the damages awarded to $243,970.00.

\* \* \* \* \*

In May 1998, Sandres J. Guidry and his wife, Cathy, retained Acadiana Architects (Acadiana) to design a building to serve as the new office and warehouse for his company, Guico Specialty Company, Inc., (Guico). Guico distributes high pressure products, such as hoses, valves, fittings, and high pressure pumps. When Acadiana finished the plans and specifications for the new building, the Guidrys took bids from different contractors, ultimately hiring Dwight Manuel, Inc. (Manuel) to construct the building. Mr. Manuel subcontracted Baldwin Redi-Mix (Redi-Mix) and Mr. Daniel Popillion, a concrete finisher. Redi-Mix was supposed to deliver concrete of a certain compression strength, specifically described as 3000 pounds per square inch (psi), for the building and 3500 psi concrete for the parking lot. The Plaintiffs became dissatisfied with Manuel's performance and terminated their contract. They hired MPW Construction, Inc., (MPW) to finish the project. At this point, Redi-Mix had already poured the concrete.

MPW finished construction and Guico began operating out of the new building. However, the concrete started cracking, prompting Mr. Guidry to have it tested. The tests revealed that the concrete's strength was only approximately 1750 psi. Testimony and delivery tickets revealed that the concrete was diluted with water at the job site, reducing the compression strength. Accordingly, Mr. and Mrs. Guidry filed suit against Manuel, Acadiana, MPW, and two individuals associated with Acadiana and MPW, William W. Koetting and William P. Mills. Mr. Guidry's company, Guico, was also a Plaintiff, alleging that the Defendants disturbed its rights as lessee of the building. Manuel filed a third-party demand against Redi-Mix and Mr. Popillion, the concrete finisher. The Plaintiffs also added a claim against Redi-Mix. Because of an inability to timely serve Mr. Popillion, the trial court severed the claim

1

against him, and he was not a party in this litigation. Nonetheless, the jury was asked to consider whether Mr. Popillion bore any responsibility.

At the end of the Plaintiffs' case, the trial court directed a verdict in favor of all Defendants except for Manuel and its insurer, Maryland Casualty Company, and Redi-Mix. The jury found Manuel 100% at fault and awarded Mr. and Mrs. Guidry $67,120.00, reduced by $29,120.00 for their failure to mitigate their damages, for a total award of $38,000.00. The jury rejected Guico's claims. The trial court rendered judgment in accord with the jury's finding and dismissed Manuel's third-party demand against Redi-Mix. Manuel appeals, only, the dismissal of its third-party demand against Redi-Mix. Plaintiffs, also, appeal Redi-Mix's dismissal, as well as the amount of damages and the jury's failure to recognize Guico's claims.

\* \* \* \* \*

## STANDARD OF REVIEW

Negligence or fault determinations, as well as the quantum of damages, are factual determinations which are entitled to great deference.[1] This court must review the jury's verdict for manifest error.[2] If we find a reasonable basis for the jury's determinations, we must affirm even though we would have made different determinations had we been the trier of fact.[3]

## REDI-MIX'S LIABILITY

Manuel alleges that Redi-Mix breached its oral contract to provide concrete of the designated strength. Alternatively, Manuel claims that the defective concrete is a result of Redi-Mix's negligence. The Plaintiffs' claims against Redi-Mix are predicated upon negligence.

There is a reasonable basis in the record for the jury's determination that Redi-Mix did not breach a duty, either in contract or in tort. The record supports that Redi-

---

[1]*See Lirette v. State Farm Ins. Co.*, 563 So.2d 850 (La.1990); *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994).

[2]*Lirette*, 563 So.2d 850.

[3]*Id.*

Mix delivered concrete of adequate strength to the construction site. Thus, Redi-Mix argues that it fulfilled its duty. Contrarily, the Plaintiffs and Manuel argue that Redi-Mix's duty extended to *pouring* concrete of adequate strength. However, there was ample testimony that once the Redi-Mix trucks arrive at the job site, the general contractor or his subcontractors are responsible for directing and supervising the pour. While, only, the Redi-Mix employees are authorized to turn the nozzle on the trucks that actually adds the water, even Manuel admitted:

> Well, typically, if there is no supervisor on site and it's just the finishers there, like let's suppose it's some other job, and I'm not there, and it's just the finishers and the concrete truck, well the finisher is going to tell the concrete truck how much water to put. **Certainly, the concrete guy not on his own is going to put water. It is true**. Those concrete finishers will tell them if they need more or less water.

Nonetheless, Manuel continued to state that on this particular pour, he was not present the whole time and because Mr. Huval, Redi-Mix's sales representative, was present, he was relying on him to make sure it was a good pour. Thus, Manuel's testimony implies that even though, typically, the contractor is responsible, Mr. Huval assumed the responsibility in this instance, simply by being present the entire time. However, Mr. Huval testified that he did not direct the truck operators to add any water. Furthermore, Mr. Clint Bishop, Redi-Mix's owner testified that its sales representatives' responsibilities were as follows:

> They're there to actually regulate, make sure that the trucks show up, and what happens is they wait for somebody to give them the go-ahead to order the trucks. They call the plant and they make sure that the trucks don't get lost on the way to the job, they don't run into any problems getting to the job. From there they make sure the truck gets to the job site. They also monitor them at their washout area to make sure they don't stand around and goof off, and they get back to the plant so that we have an efficient turn around time, and that we don't have somebody waiting on concrete.

Additionally, Dr. Jerry Householder, an expert in construction management, structural and civil engineering, testified that the contractor or subcontractors were responsible for determining whether water should be added to the concrete. He further testified:

3

Q. Hypothetically, let's assume that a general contractor wasn't there when a pour was being placed. Would the responsibility at that point shift to the concrete supplier?

A. No, not the supplier. It's never in the line of fire. It shifts to the person who represents the general contractor or the finisher. The finisher is always going to be there, but if the concrete truck rolls up and there's nobody there, he's going to turn around and go back. Somebody's got to be there to accept the delivery.

Accordingly, we find a reasonable basis for the jury's determination that Manuel was the sole responsible party at the time the water was added to the concrete.

The Plaintiffs and Manuel, also, argued that Redi-Mix used fly ash, an add mixture, in the concrete mix without any authorization. However, testimony revealed that fly ash is regarded as a cementious material that is commonly used in the industry. Furthermore, no witness contended that the mix design Redi-Mix used would have produced less than the specified strength, notwithstanding that the mix design included fly ash.

Manuel orally contracted with Redi-Mix for concrete of 3000 psi and 3500 psi. Manuel argues that the fact that the testing revealed concrete of inadequate strength is proof positive that Redi-Mix breached its contract and the burden shifts to Redi-Mix to prove there was an amendment to the contract.

Breach is a question of fact and we may not disturb a jury's finding unless there is no reasonable basis for it in the record. Testimony supported that once the trucks arrived at the site, Redi-Mix had fulfilled its contractual duty to deliver concrete of the required strength. In the instant case, the jury could have determined that once the Redi-Mix trucks arrived at the job, the pour was under the supervision and direction of the contractor or subcontractors. The record reasonably supports this determination. Once the duty is placed on the contractor, he has the burden of proving that the addition of water was unauthorized rather than Redi-Mix having to prove that it was, in fact, authorized.

Manuel supports its argument that Redi-Mix should be liable with a similar case from the fifth circuit, *Troyer v. Webster Homes, Inc.*[4] In *Troyer*, the jury assessed the concrete company with 10% fault. The fifth circuit affirmed this finding, stating that

---

[4]566 So.2d 114 (La.App. 5 Cir.), *writs denied,* 571 So.2d 650, 651 (La.1990).

the concrete company knew that excessive water was being added and that it knew or should have known that the effects of the water would be detrimental to the concrete.

Nonetheless, this does not mandate a finding of liability against Redi-Mix in the case at bar. In *Troyer*, the fifth circuit found no "clear error" in the jury's determination, given that, "it was the jury's province to determine the amount of weight to attribute to their [the concrete company's employees'] testimony."[5] Likewise, even though this jury reached a different result, we cannot find clear error it its determination.

Furthermore, *Troyer* is distinguishable because, in that case, the contractors testified that they knew nothing about concrete and that the concrete representative, *in fact*, supervised the pour and instructed that the water be added. By the time of trial, the representative was deceased and, therefore, could not positively rebut this testimony. Here, Mr. Huval testified that he did not direct or supervise the pour, nor did he ask that water be added.

Thus, we find a reasonable basis for the jury's determination that Redi-Mix was not liable for the defective concrete.

**DAMAGES QUANTUM**

The Plaintiffs appeal the jury's award of only $38,000.00. While we recognize the trial court's discretion in assessing damages, a careful review of the testimony in this case leaves no doubt that $38,000.00 is wholly inadequate to compensate the Plaintiffs and, thus, is an abuse of discretion.

Two defense experts testified that the Plaintiffs could repair the existing problems in the concrete for about $10,000.00. Mr. George Hammitt, the Defendants' expert in construction management and civil engineering, noted that there were two small areas of concrete that needed to be cut out and replaced with good quality concrete and suggested that the existing cracks, throughout the building, could be sealed with a material called Overcrete. Mr. Jerry Householder, Redi-Mix's expert in construction management, structural and civil engineering, gave similar testimony and concurred with Dr. Hammitt's estimate of $10,000.00 for repairs.

Additionally, Mr. Gene Cope, Defendants' expert real estate appraiser and consultant, testified that the property's value, excluding consideration of any possible

---

[5]*Id.* at 118.

concrete problems, would be $280,000.00, but considering the known problems with the concrete, he would deduct ten percent of that, or $28,000.00.

Accordingly, on the surface, the jury's determination that the Plaintiffs incurred only $38,000.00 in damages seems reasonable, particularly in light of the instruction the court gave them:

> When a person sustains property damages due to the fault of another, which is what is claimed here, he's entitled to recover damages including the cost of restoration that has been or may be reasonably incurred or at his election the difference between the value of the property before and after the harm or the damage. If, however, the costs of restoring the property to its original condition is disproportionate to the value of the property or economically wasteful, then damages are measured only by the difference between the value of the property before and after the harm.

Apparently, the jury awarded the $10,000.00 for the repairs the Defendants' experts suggested, along with $28,000.00 for the diminution in value of the building because of the concrete problems. However, this "repair method" is a superficial one which does not contemplate repairing the actual damage but only addresses the aesthetic problems that were immediately apparent. It leaves the Plaintiffs completely uncompensated for the concrete's inadequate strength, which is the real problem requiring a remedy. It is unrefuted that the concrete does not meet Lafayette Parish's standard building codes, which require that the concrete have a minimum PSI of 2500. Simply sealing the cracks cannot bring the concrete up to code and, therefore, does not constitute a "repair" as far as the building regulation laws are concerned. In fact, Mr. Hammitt admitted that if inspectors come to the site and see something is not up to code, they tell you to "fix it."

Furthermore, Mr. Cope based his estimate of $28,000.00, a ten percent reduction, on the concrete's visible defects such as "the dark area that I'm sure has been described, that area in the parking lot, and so forth and so on." Mr. Cope did not take into account the inadequacy of the concrete's strength. Indeed, Mr. Cope testified:

> Q. What if these purchasers were also told and the cost to bring this slab up to specifications is going to be $200,000.00. Do you think

6

at that point they are going to say well let's just knock ten (10%) percent off.

A. I think they would reject the purchase altogether.

Additionally, while the instruction that the trial court gave the jury is a direct quote from our supreme court's opinion in *Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Company*,[6] it does not completely set forth the rule of law that case states and applies: "that reasons personal to an owner are often the basis of a property damage award, which exceeds the property's value before it was damaged."[7] Specifically, the supreme court stated:

> Accordingly, we conclude that, as a general rule of thumb, when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, *at his election*, the difference between the value of the property before and after the harm. If, however, the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, *unless there is a reason personal to the owner for restoring the original condition or there is a reason to believe that the plaintiff will, in fact, make the repairs*, damages are measured only by the difference between the value of the property before and after the harm. *Consequently, if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building.*[8]

The italicized portion of this rule, though pertinent to the case at bar, was omitted from the instruction the trial court gave to the jury. The Guidrys, specifically, tailored the building to house their business, Guico, Inc. Mr. Guidry testified, at length, concerning the special needs of his company which the building was to accommodate.

Furthermore, the court did not buttress its instruction to the jury with the cornerstone of Louisiana damages law, "that the goals of our Civil Code and the

---

[6]618 So.2d 874 (La.1993).

[7]*National Union Fire Ins. Co. v. Harrington*, 02-832, p.26 (La.App. 3 Cir. 4/17/03), 854 So.2d 880, 897 (citing *Roman Catholic*, 618 So.2d 874 at 879).

[8]618 So.2d at 879-80 (emphasis added).

7

Louisiana Constitution are to 'compensate the victim to the full extent of his loss and restore him to as good a position as he held prior to the damage.'"[9]

Accordingly, we find that the jury abused its discretion in awarding, only, $38,000.00 in damages to the Plaintiffs. The Plaintiffs' expert, Mr. Woody LeBlanc, testified that it would cost approximately $215,690.00 to replace the concrete slab with one of adequate strength. Additionally, Mr. Guidry estimated that he would incur costs of $28,280.00 to maintain a temporary structure to operate his business during the construction. Thus, the total replacement cost is $243,970.00. We find it essential to award the Plaintiffs this amount to properly repair the problem by replacing the defective concrete.

**MITIGATING DAMAGES**

Additionally, Mr. Guidry testified he incurred $29,120.00 in additional cleaning expenses because of the cracks in the concrete. The jury included this amount in its damages award, but reduced the award by the same amount, finding that the Plaintiffs failed to mitigate their damages. Specifically, Mr. Guidry admitted that he was told that filling the cracks with epoxy would prevent the concrete from sprawling and that sealing the cracks would have eliminated the need for the additional cleaning costs. "Injured parties have a duty to mitigate their damages; however, they are only required to act reasonably in minimizing the consequences of their injury."[10] The Plaintiffs argue that the jury erred in reducing the damages because no one testified that Mr. Guidry acted unreasonably. However, the reasonableness of his actions was a determination best left to the jury.

Finally, the Plaintiffs argue that the jury should have awarded the expenses they incurred to test the concrete and in grinding it down and smoothing it out. However, Mr. Guidry testified that he withheld money he owed Manuel and used it for these purposes. Thus, we cannot say the jury erred in failing to award these costs.

---

[9]*Harrington*, 854 So.2d at 897 (quoting *Roman Catholic*, 618 So.2d at 879).

[10]*Lacombe v. Buras*, 00-1145, p.4 (La.App. 3 Cir. 1/31/01), 778 So.2d 1181, 1185 (citing *Al's Trucking, Inc. v. State Farm Fire & Cas. Co.*, 98-1542 (La.App. 3 Cir. 5/12/99), 735 So.2d 833, *writ denied*, 99-1681 (La. 9/24/99), 747 So.2d 1122).

**GUICO'S CLAIMS**

The only evidence concerning damages to Guico consisted of the extra costs the business incurred for cleaning the cracks in the concrete. The jury did recognize this element of damages. However, it chose to compensate Mr. and Mrs. Guidry, the owners of the building, rather than the business for these particular costs. Aside from these costs, Guico failed to present any evidence of loss of profits or interruption of its business due to the defective concrete. Thus, the jury's determination is a reasonable one.

## CONCLUSION

We amend the trial court's judgment, increasing the damages awarded the Plaintiffs to $243,970.00. In all other respects, the trial court's ruling is affirmed. We cast the costs of this appeal against Manuel and its insurer.

**AFFIRMED AS AMENDED.**

9