STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-429


BRIAN BORDELON, JR.

VERSUS

AFFORDABLE MOVERS, LLC, ET AL.


**********


APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2008-1577-B
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE


**********


**BILLY HOWARD EZELL**
**JUDGE**


**********


Court composed of Marc T. Amy, Billy Howard Ezell, and James T. Genovese, Judges.


**AFFIRMED.**

**Jerold Edward Knoll**
**The Knoll Law Firm**
**P. O. Box 426**
**Marksville, La 71351**
**(318) 253-6200**
**Counsel for Plaintiff/Appellee:**
**Brian Bordelon, Jr.**

**Rodney Marchive Rabalais**
**P. O. Box 447**
**Marksville, LA 71351**
**(318) 253-4622**
**Counsel for Defendants/Appellants:**
**Affordable Movers, LLC**
**Brad Boring**

**EZELL, JUDGE**.

Brad Boring and his company, Affordable Movers, LLC (Affordable Movers), appeal a trial court judgment awarding Brian Bordelon, Jr. damages for the property damage caused to his mobile home during its move. The Defendants claim that Mr. Bordelon failed to carry his burden of proof as to causation and the extent of such damages. They also allege that Mr. Bordelon should have been assessed a percentage of the fault for failure to mitigate damages.

## FACTS

Brian Bordelon bought a mobile home from a private seller. The home was located in Odenberg, and he wanted to move the home to his property in Hamburg. Mr. Bordelon hired Affordable Movers, LLC, owned by Brad Boring, to deactivate the home in Odenberg, move it Hamburg, and reactivate it.

On December 20, 2007, Affordable Movers began the process of deactivating the mobile home. The tongue of the trailer was found in the pasture and bolted onto the chassis. Mr. Boring provided the wheels and axles. On the turn out of the property and onto the road, the trailer got hung up on the road, so a truck had to pull the trailer out.

Prior to reaching Hamburg, it began to rain. The decision was made to park the mobile home and the truck towing it at Maddie's One Stop, a truck stop in Simmesport, until the weather improved. The mobile home was finally moved to Hamburg on December 27. At the time it was raining. When the mobile home was initially placed on the property, the front door was facing the levee in the back, and the back door was facing the road. Mr. Bordelon requested that the front door face the road, so Mr. Boring and his crew then proceeded to turn the mobile home around, utilizing a translift. The lot was muddy from the rain. In the process, the tongue hit

the ground, causing the mobile home to slide down the blocks and tilt over. At that point, Mr. Boring told Mr. Bordelon he could find someone else to finish setting up and leveling the mobile home.

Mr. Bordelon filed suit against Mr. Boring and Affordable Movers asking for damages to the mobile home as well as general damages. The trial court awarded $2,500.00 as damages for repair of the chassis, $20,000.00 for damages to the mobile home, and $10,000.00 in general damages. Mr. Boring and Affordable appeal the award of damages.

## DAMAGES

Mitigation of Damages

Both of Defendants' arguments center around Mr. Bordelon's failure to level the mobile home before determining the amount of damage. Therefore, we will first address Defendants' arguments that the trial court erred in finding that they were required to plead failure to mitigate damages or comparative fault as an affirmative defense. Alternatively, they claim that the pleadings were enlarged to include these defenses.

"The law related to the duty of an injured party to mitigate the damages presumes that further damage has occurred following the tort or breach of contract." *Schroeder v. DiPascal Cabinet Co., Inc.*, 467 So.2d 1380, 1382 (La.App. 5 Cir. 1985).

In the present case, there was no testimony or evidence that there was further damage to the mobile home because it was not leveled. The fact that it was not level made it difficult to determine what problems with the mobile home would remain after it was leveled. Therefore, we find that this is not a mitigation of damages or comparative fault issue. The fact that the mobile home was not level when damages

2

were estimated goes to the issue of the amount of damages incurred when the mobile home was dropped.

Amount of Damages

The Defendants argue that Mr. Bordelon failed to prove his damages by a preponderance of the evidence and that the damages awarded were excessive. They argue that the witnesses he called to testify about the amount of damage to the mobile home all testified that they could not determine, without leveling the mobile home, the extent of the damages.

In discussing the issue of damages, the trial court stated:

> The issue of damages is made somewhat difficult based on the fact that Bordelon has never secured the services of any mobile home mover and/or person whatsoever to block and level the mobile home. Photographs introduced into evidence clearly indicate that there are serious problems with the mobile home and/or damages in the nature of cracks in the wall; holes in the wall; moved toilet; chassis damage; damage to trim; ceiling damage; wall damage; window damage; disconnected molding; door damage; as well [as] other damages. To substantiate his claim of damages, Bordelon [introduced] the testimony of Paul Juneau, George Mayeaux, and Eric Rusk.
>
> . . . .
>
> This Court did perform a personal inspection of the mobile home. The home remains in a tilted condition. To enter the home, the Court had to remove cinder blocks holding the rear door shut; climb onto remaining cinder blocks; hold on to each wall; and climb in. Upon entry this Court was amazed at the condition of the home - - - it looked like new. This home certainly has the potential to be a fine home. However, this inspection did reveal the damages as shown in the photos and testimony at trial. The question still remains as to whether or not some of these damages would have been repaired upon proper leveling and blocking of the mobile home. This, of course, should have been done by Boring in fulfillment of contractual obligations.

When a person sustains property damage as result of the fault of another, he is entitled to recover damages including cost of restoration that has been or may be reasonably incurred or, at his election, he may recover the difference between the value of the property before and after the damage. *Roman Catholic Church of*

3

*Archdiocese of New Orleans v. Louisiana Gas Serv. Co.*, 618 So.2d 874 (La.1993); *Frisby v. Mugnier*, 06-2288 (La.App. 1 Cir. 9/14/07), 971 So.2d 1045, *writ denied*, 07-2021 (La. 12/7/07), 969 So.2d 638. However, if the costs of restoring the property to its original condition is disproportionate to the value of the property or economically wasteful, damages are measured only by the difference between the value of the property before and after the damage, unless there is a personal reason to the owner to restore the property to its original condition or there is reason to believe that the plaintiff will, in fact, make the repairs. *Id.*

A trial court is given much discretion in the assessment of damages. *Williams v. City of Baton Rouge*, 98-1981, 98-2024 (La. 4/13/99), 731 So.2d 240. Therefore, the appellate court will only disturb the damage award when there has been a clear abuse of discretion. *Id.*

Three witnesses testified concerning the damage to Mr. Bordelon's mobile home by way of deposition. George Mayeaux testified concerning the value and condition of the mobile home when he appraised it in December 2007 for the purpose of the loan to purchase the mobile home. He stated that the mobile home was in perfect condition. At that time, he valued the mobile home at $30,000.00.

Paul Juneau, a welder, fabricator, and owner of Fab-Tec, offered testimony concerning the chassis of the mobile home. Mr. Juneau explained that he has repaired four or five chassis and had actually built one chassis. It was his opinion that the chassis was bent and twisted so it would need to be replaced. He further testified that the bent chassis may not interfere with mobility but could affect the leveling of the mobile home. However, the mobile home would have to be leveled to find out. He estimated $5,662.25 to replace the chassis and $2,500.00 to twist the bend out.

4

Eric Rusk, a residential contractor who has done some repair work on mobile homes, examined the home to determine the repairs that were necessary. He did agree that it would be hard to tell what kind of repairs would be absolutely necessary until the mobile home was leveled. Upon inspection, Mr. Rusk noted that most of the inside molding was separated from the inside structure, the interior doors could not be opened, there were four or five buckles in the floor, the kitchen grout was cracked, and there were cracks in the ceiling. His estimate for materials and labor to repair these problems, which included leveling the trailer and placing it on blocks, was $20,036.82.

The trial court also performed a personal inspection of the mobile home. The trial court's observation of the damages to the mobile home were consistent with the testimony and photographs introduced into evidence.

No evidence was offered by the Defendants as to whether any of the observed defects would be corrected once the trailer was level. Given the testimony and evidence, we cannot say the trial court abused its discretion in its award of damages.

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Affordable Movers, LLC and Brad Boring.

**AFFIRMED.**