KLEES, Judge.
Defendant Chevron appeals the trial court’s judgment awarding plaintiffs $848,-528.75 in damages for injury to their oyster leases. We affirm.
Plaintiffs, Valarie and Darold Sercovich, are the owners of three oyster leases (respectively referred to as Lease 25223, Lease 22768, and Lease 26074) in the Cuselieh Bay Area of Plaquemines Parish. Mr. Sercovich has worked on , these leases with his family *436 for thirty-five years, first with his father and brothers and now with his son. He has harvested oysters from these leases on an annual basis except for certain periods of time when oyster harvesting was prohibited by the bacteria levels of the water. In 1986, 1987 and 1988, the leases produced an average of 16,964 sacks of oysters per year.
On April 28, 1989, an oil spill occurred at the Chevron No. 4 well in Cuselich Bay. The spill, which involved 57 barrels of oil, covered part of Lease 25223. Chevron eventually recovered 53 barrels of the spilled oil in its cleanup procedure. Mr. Sercovich, upon noticing oil in the water and the presence of a cleanup crew, hired Mr. Noel Brodtmann, a marine biologist, to determine the extent of damage to the oyster population.
In June of 1989, Chevron contacted Mr. Sercovich to inform him that Chevron would be entering his leases to perform plug and abandon operations on several wells located there. When these operations began on June 23, 1989, Mr. Sercovich, who was concerned about the effects on his oysters, videotaped the vessels and their movements. He also had Mr. Brodtmann set up sample stations from which he could measure the oyster mortality rate before and after the plug and abandon operation, which lasted about two weeks.
In 1989, plaintiffs were able to harvest only about 8,500 sacks of oysters from the leases; in 1990, they harvested 5,000 sacks. Plaintiffs filed suit against Chevron for damage to their oyster leases allegedly caused by the oil spill and the plug and abandon operations. On November 17,1992 following a full trial, the district court found Chevron liable and awarded damages to plaintiffs for restoration of the leases ($746,800.00) and for lost profits ($100,928.75). Chevron now appeals this judgment on the following grounds: (1) The trial court’s award of restoration damages to the Sercoviches was erroneous as a matter of law because they do not own the water bottoms, and the state of Louisiana, which owns the water bottoms, is an indispensable party to this action; (2) the amount of restoration damages awarded is excessive; (3) the amount of lost profits awarded was based upon an improper calculation method and is therefore excessive; and (4) Chevron should not be held strictly hable under the circumstances of this case. We address each of these issues in turn.
Defendant’s first assignment of error, that restoration damages were improperly awarded to the Sercoviches, has no merit. La.R.S. 56:423.B clearly provides an oyster lessee the right to maintain an action for damages against anyone who causes wrongful or negligent injury “to the beds or grounds under lease to such lessee.” (Emphasis added). This court has repeatedly held that the cost of restoring or reconstruct ing the property is part of the compensation due an oyster lessee for damage to the leased beds, and has awarded such restoration costs. See, e.g., Skansi v. Signal Petroleum, 375 So.2d 965, 967 (La.App. 4th Cir.1979); Tesvich v. 3-A Towing Co., 547 So.2d 1106 (La.App. 4th Cir.1989). Recently, in Inabnet v. Exxon Corp., 614 So.2d 336 (La.App. 4th Cir.1993), writ granted 618 So.2d 397 (La.1993) we rejected the same argument made by Chevron herein and reaffirmed that the oyster lessee, not the state, is entitled to reconstruction costs. The sole purpose of restoring or reconstructing the water bottoms is to restore their oyster-producing capacity, which inures to the benefit of the oyster lessee. In arguing that the state is the proper party to claim these damages, defendant relies solely on dicta in an unpublished decision of the federal Fifth Circuit Court of Appeal interpreting Louisiana law, Faroc v. Gulf Oil, 806 F.2d 260 (5th Cir. 1986). In that case, the federal district court had declined to award restoration damages, and the appellate court affirmed that decision. In so doing, the court mentioned the state ownership of water bottoms and noted that “it would ... appear” that the state, rather than the oyster lessee, should seek restoration costs. However, the appellate court ultimately held that even if the oyster lessee’s property interest allowed him to seek restoration costs, the use of such a measure of damages under the particular facts of the case was within the discretion of the district court, and the plaintiff had failed to show that the district court was required as a matter of law to choose the cost of restoration as the measure of damages.
Faroe is not the law of Louisiana, and we decline to depart from our holding in Inabnet *437 and prior cases that oyster lessees are the proper parties to seek restoration costs of oyster beds in state-owned waters. Because we reject Chevron’s argument in this respect, we also reject its contention that the state of Louisiana is an indispensable party to this action.
Defendant’s next two assignments of error concern the quantum of damages awarded and the calculation of such. The factual finding and conclusions of the trial court will not be disturbed in the absence of manifest error, and its award of damages will not be disturbed unless it constitutes an abuse of the trial court’s great discretion in this regard. Tesvich v. 3-A Towing Co., supra, at 1109. In this case, the record supports the trial judge’s factual conclusions, and his award of restoration costs and lost profits is explained in well-written, extensive reasons for judgment. We find no basis for overturning the award.
Defendants’s argument with regard to quantum is essentially a complaint that the trial judge chose to believe the testimony of plaintiffs’ expert over that of defendant’s own experts. However, when the testimony is supported by evidence in the record and the trial judge’s conclusions are reasonable, we must give much deference to the trial court’s assessments of credibility. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). The award of restoration costs is supported by the testimony of Mr. Noel Brodtmann, a highly qualified marine biologist with specific experience in this field, who stated that the reefs could be restored to their original condition by laying a twelve-inch thick pad of crushed limestone over the affected area. Defendant’s expert, Mr. Bob Aneelet of the Louisiana Department of Wildlife Fisheries, who was equally well-qualified, testified that the plaintiffs could be compensated at much less expense by spreading only 150 cubic yards of crushed limestone for each acre destroyed. The trial judge determined, however, that the two methods would not yield the same result. He found that only the method advocated by the plaintiffs expert would actually restore the water bottoms to their original habitat, i.e., oyster reefs; whereas, the method recommended by Mr. Aneelet would merely create an environment where oysters could grow and eventually create a reef. The trial judge’s selection of the first method as just compensation for the plaintiffs’ loss is reasonable and is clearly supported by evidence in the record. Therefore we will not disturb the award.
Similarly, the trial judge determined the award for lost profits based upon the market value of the oysters which would have been harvested, less the expense of producing those oysters for the market. See Tesvich v. 3-A’s Towing Co., supra, at 1110-1111. The figures used by the trial court to make these calculations are well supported by evidence from the Sercoviches’ business records and Mr. Brodtmann’s oyster population and mortality studies. We find no manifest error in the trial judge’s methodology or in his conclusions.
During the oral argument of this appeal, Chevron’s attorney contended that the trial court’s determination of quantum was in conflict with a recent Louisiana Supreme Court decision holding that if the cost of restoring property (damaged by a tortfeasor) to its original condition is disproportionate to the value of the property, plaintiff is not entitled to restoration costs, but only to the difference in the value of the property before and after the harm. See Roman Catholic Church v. Louisiana Gas Service Company, 618 So.2d 874, 879-880 (La.1993). Based on this case, defendant argues that the damages are excessive because the amount awarded the Sercoviches for restoration exceeds the value of the leases, as measured by the minimal amount the Sercoviches pay the state to lease the property.
We do not believe that the award of restoration costs herein violates the principles of Roman Catholic Church v. Louisiana Gas Service Company, supra. That case involved the restoration of an apartment building damaged by fire, and the owner was ultimately awarded the full restoration costs. The instant case involves an oyster lease. It is obvious that the value of an oyster lease cannot be determined in exactly the same way as the value of an apartment building. An oyster lessee pays a nominal amount for his lease, usually expends a great deal of time, effort and resources to work the lease, and then, if he is lucky, makes a good profit. The amount paid for the lease is not an *438 accurate reflection of its value. In the instant case, we do not find that the cost of restoration is disproportionate to the value of plaintiffs’ leases.
Defendant’s final argument is that strict liability under article 667 of the Civil Code should not apply to Chevron’s actions in the instant case. This argument has no merit. The damage caused by Chevron to plaintiffs’ leases amounts to more than a mere inconvenience. In Butler v. Baber, 529 So.2d 374 (La.1988), the Supreme Court held that when a mineral lessee’s dredging operations cause damage to an oyster lessee’s leasehold and/or oysters, the mineral lessee is liable to the oyster lessee irrespective of the fact that the mineral lessee may have exercised great care and prudence in the conduct of its operation. Article 667 clearly applies to this situation, and under that article, Chevron’s prudence is irrelevant; it is the fact that its activities caused damage which is significant. We therefore reject his argument.
Accordingly, for the reasons given, we affirm the trial court’s judgment.

AFFIRMED.