liKLEES, Judge.
We have this matter on remand from the Louisiana Supreme Court. Our decision of October 28, 1993, affirming the trial court’s judgment (Sereovich v. Chevron U.S.A., Inc., 626 So.2d 434 (La.App. 4th Cir.1993)) was vacated by the Supreme Court on October 28, 1994, and the case was remanded to us “for consideration in light of Inabnet v. Exxon Corporation", 93-0681 (La. 9/6/94), 642 So.2d 1243.
Plaintiffs, Valarie and Darold Sereovich, are the owners of three oyster leases in the Cuselich Bay area of Plaquemines Parish. The Sereovich family has worked these leases for over thirty-five years. The Sercovich-es instituted this lawsuit seeking recovery from defendant Chevron for damage to their oyster leases allegedly caused by an April 28, 1989 oil spill from a Chevron well in Cuselich Bay, and the plug and abandon operations conducted by Chevron on several wells in June of 1989. In November of 1992, following a full trial on the merits, the district court rendered judgment in favor of plaintiffs and awarded them $848,528.75 in damages from Chevron. The trial court’s written reasons for judgment indicated that approximately $100,000.00 of the award was for lost profits and the remainder was for restoration of the leases. It is also clear from reading the trial court’s reasons for judgment, which addresses only the issues of causation and damages, that the basis of Chevron’s liability was strict liability.
On appeal, we affirmed the trial court’s judgment, noting specifically that: (1) Plaintiffs, the oyster lessees, were properly awarded restoration damages even though the state of Louisiana owns the water bottoms being restored; (2) The state of Louisiana was not an indispensable party to the action; (3) The damages awarded were not excessive; and (4) Chevron was properly found strictly hable under article 667 of the Civil Code for the damage to plaintiffs’ oyster leases caused by Chevron’s operation of its oil wells.
Our initial decision in the instant case complied with the prevailing law in this circuit at the time. However, the Supreme Court’s subsequent decision in Inabnet v. Exxon, supra, a factually similar case, changed the law with regard to certain key issues also present in the instant case.
pin Inabnet, the plaintiff, an oyster lessee, sought to recover damages to his oyster lease allegedly caused by dredging operations conducted on behalf of Exxon Corporation, which held a surface lease and canal right-of-way that predated and overlapped plaintiffs oyster lease. The trial court rendered judgment in favor of the oyster lessee. On appeal, we reduced the amount of damages and affirmed. Inabnet v. Exxon Corporation, 614 So.2d 336 (La.App. 4th Cir.1993). The Supreme Court granted writs, and ultimately issued an opinion in which it revisited and clarified several issues common to cases involving conflict between oyster lessees and the holders of mineral rights.
First, the Court clarified its prior decision in Butler v. Baber, 529 So.2d 374 (La.1988), in which it had held that strict liability can be imposed on a mineral lessee who, without negligence under usual standards, causes damage to oyster beds coexisting on the same property which is subject to the mineral lease. In Inabnet, the Court made a distinction between the situation in which the oyster lessee and the mineral lessee hold coexisting rights from the owner to the same immovable property, and the situation in which the oyster lessee and the mineral lessee are neighboring proprietors. The Court noted that in the first situation, as the two lessees are not literally “neighbors”, Civil Code article 667 has a more limited application. With regard to this situation, the Court stated:
Although Butler correctly held that negligence is not the standard to be applied, there are many other considerations that go into the determination of delictual liabil *778 ity between holders of coexisting rights to the same immovable property, such as the temporal order of the leases or other rights, the nature of the rights, the type of activities normally incidental to the use for which the rights were granted, the damage-causing party’s knowledge of the existence of the damaged party’s rights, the availability of alternative methods of exercising the right so as to cause little or no damage, and others. Of course, the existence of these considerations and the importance thereof will vary from case to case.
We therefore clarify the Butler decision to hold that, in cases involving damages caused to one holder of a right to immovable property by another holder of a right to the same property, the court in determining “fault” under Article 2315 must consider not only Articles 667-669, but also all other applicable codal and statutory Rrules and legal principles and other pertinent considerations.
Inabnet v. Exxon supra, at 1252. Applying these principles to the area in which the plaintiffs lease and Exxon’s lease overlapped, the Court found that the nature of Exxon’s existing use incidental to its surface lease and right-of-way precluded oyster production on the same property. Id. at 1253. The Court had previously noted that Exxon’s contracts with the state had expressly relieved Exxon of any obligation to restore the property to its original condition at the expiration of the agreement, and the state had reserved the right to use the property in any manner that did not interfere with Exxon’s rights. Id. at 1247. Under these circumstances, because Exxon had been using its canal and operating its tank battery for ten years, the Court found that these acres were unavailable for oyster production and plaintiffs right to use them under his subsequent lease was nil. Id. at 1253.
Turning to the issue of neighboring proprietors, the Court held that the principles enunciated in Civil Code articles 667-669 are the primary considerations in determining delictual liability in that situation. Id. Examining the facts, the Court found that Exxon was strictly liable for the damages sustained by the plaintiff because Exxon’s activities had occasioned more than “mere inconvenience” to its neighbor. Id. at 1255.
Finally, the Inabnet Court considered the issue of which damages were appropriate. In a significant departure from the prior jurisprudence, the Court held that the owner of the water bottoms (usually the state), not the oyster lessee, is normally the proper party to recover the costs of restoring the water bottoms to their original condition to facilitate the growth of oysters. Id. 1255. The court went on to note that the proper measure of the oyster lessee’s damages from dredging is not the cost of restoration, but rather the difference in the value of the plaintiffs leasehold interest before and after the dredging, plus the loss of seed oysters and the loss of anticipated income from production from those oysters. Id. at 1256.
Because the record in Inabnet did not contain any evidence concerning the diminution in value of the plaintiffs leasehold interest, the Supreme Court remanded the case to the district court for further evidence and a decision on that issue. The Inabnet Court therefore set aside the award for restoration costs, and affirmed the portion of the [4award of damages for loss of seed oysters and loss of anticipated income from oyster production. Id.
It is in the context of this rather complex decision that we are instructed to reconsider the instant matter. On remand, Chevron argues that the amount of the award attributable to restoration (approximately $700,-000.00) should be reversed, as those damages would properly belong only to the state, which is not even a party to this lawsuit. Additionally, Chevron argues that the entire award to the plaintiff must be reversed because, under the new standard of liability enunciated by the Supreme Court, Chevron was not at fault. Specifically Chevron contends that it is not liable because it acted with “reasonable regard” for plaintiffs’ interests. “Reasonable regard” is a term used in the Mineral Code (R.S. 31:11) to describe the reciprocal duty owed to each other by the owner of land burdened with a mineral right and the holder of the mineral right. However, according to Inabnet, it is only one of the *779 principles to be considered in determining delictual liability between holders of coexisting rights to the same property.
Plaintiffs, on the other hand, argue that the factual distinctions between the instant case and Inabnet place this case squarely outside of the Inabnet Court’s ruling with regard to recovery of restoration costs. For this proposition, plaintiffs rely heavily on a footnote in the Inabnet decision, which reads:
The owner of water bottoms is normally the party with the right of action to recover the costs of restoration. In some situations, as in a longterm lease in which the lessee has made significant improvements, the lessee may have a greater interest than the owner in restoring damaged property. The present case, however, does not present such a situation. Moreover, if the oyster lessee were allowed to recover damages for injury to the water bottoms, the lessee would not be obliged to restore the water bottoms and could use the money as he pleases, leaving the owner (the State) without even the opportunity to accomplish the restoration.
Id. at 1255 n. 15.
Because plaintiffs have a thirty-five year oyster lease which predates any mineral rights obtained by Chevron, they contend they fit into the potential exception to the rule mentioned in the footnote.
jy^Alternatively, plaintiffs argue that, because the evidence necessary to decide the case under the principles of Inabnet is absent from the record, this case must be remanded to the district court. We agree.
Just as in Inabnet, there was no evidence presented in the instant case as to the value of plaintiffs leasehold interest before and after Chevron’s disturbance, because the damages were couched in terms of the cost to restore the land to make it again conducive to oyster production. As plaintiffs point out, they did not have the opportunity to present evidence as to the improvements they now claim they have made to the land. More importantly, there was no evidence presented in the trial court on the issue of Chevron’s negligence or any other type of fault which, according, to the Supreme Court in Inabnet, must be considered to determine delictual liability. For instance, the Supreme Court clearly indicated that the terms of the leases should be considered in determining liability between co-lessees of the same property; nevertheless, neither Chevron’s mineral lease nor the oyster lease were introduced into evidence at trial.
For these reasons, we conclude that remanding the instant case to the trial court is the only feasible way to resolve the new issues brought to light by the Inabnet decision. Chevron’s argument that a remand would merely give plaintiffs “another bite at the apple” is specious. Contrary to Chevron’s assertion, its negligence or fault was never made an issue at trial and was never addressed by either the trial court in its reasons for judgment or by the court of appeal (although negligence was alleged in plaintiffs’ petition). At the time this case was tried, the prevailing law, as expressed in Butler v. Baber, supra, was that only causation and damages need be proved for the defendant to be found strictly liable. Now that the law has changed, it would be a grave injustice to deny plaintiffs the opportunity to present further evidence in this case.
Accordingly, for the reasons given, the judgment of the trial court is vacated and the matter is remanded to that court for further proceedings consistent with this opinion.

REMANDED.