"L" INVESTMENTS, LTD., A PARTNERSHIP, APPELLANT, V. ELEANOR LYNCH, APPELLEE.

322 N.W.2d 651

Filed July 30, 1982. No. 44256.

Marianne Clare Vainiunas of Marks, Clare, Hopkins, Rauth & Cuddigan, for appellant.

Eugene L. Hillman of McCormack, Cooney, Mooney & Hillman, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

KRIVOSHA, C.J.

This case presents to the court the question of what is the proper measure of damages when recovery is sought for the negligent damage to an improvement which is a part of the real estate, when the property can be repaired or restored. Initially, this case was tried in the municipal court of the city of Omaha, Nebraska, and resulted in a judgment in favor of the property owner. On appeal to the District Court for Douglas County, Nebraska, the trial court, relying upon what appears to be at least one of the rules of law in Nebraska at the present time, reversed the judgment and dismissed the action. In view of the fact that we believe the applicable rule should be otherwise, we reverse the action of the trial court.

The record discloses that on September 25, 1977, appellee Eleanor Lynch (Lynch), while operating a motor vehicle owned by John B. Sheffield, struck a building located at 1492 South 16th Street in the city of Omaha, Nebraska, and owned by the appellant, "L" Investments, Ltd. ("L" Investments).

"L" Investments filed a petition in the municipal

court of the city of Omaha, Nebraska, alleging that "L" Investments was the owner of the property which was struck by Lynch on September 25, 1977, when the automobile she was driving collided with the south side of the building. The petition further alleged that the building was damaged by the collision and that such damage was proximately caused by the negligence of Lynch. The acts of negligence were specifically set out in the petition. The petition further alleged that as a direct and proximate result of the negligence of Lynch, "L" Investments was damaged in the amount of $3,200. Although Sheffield and Lynch filed an answer denying generally all of the allegations of the petition, just before trial commenced Lynch admitted liability but denied that her negligence caused the damages claimed by "L" Investments. During the course of the trial in the municipal court, testimony was adduced to establish that as a result of the accident a portion of one of the outer walls measuring 8 feet by 4 feet was pushed in and damage was done to both the wall itself and several windows located in the wall. Testimony further established that the building itself was approximately 100 feet by 100 feet. Further testimony was adduced by "L" Investments which established in great detail how the repairs would be made to the property and what the cost would be. A complete breakdown of how the cost of repairs in the amount of $2,640 was arrived at was testified to by an expert called by "L" Investments. Following the trial, the trial court entered judgment for "L" Investments and against Lynch in the sum of $2,640. Sheffield was dismissed from the lawsuit by "L" Investments before judgment and may be disregarded for purposes of this appeal.

Lynch then appealed to the District Court for Douglas County, Nebraska, and a hearing de novo on the record was held on February 19, 1981. The trial court, relying upon what it correctly understood

to be the rule in Nebraska, as announced in *Hunt v. Chicago, B. & Q. R.R. Co.,* 180 Neb. 375, 143 N.W.2d 263 (1966), found that the injury sustained by "L" Investments as a result of Lynch's negligence was temporary in character and that therefore the proper measure of damages for recovery was the cost of restoration, if less than the diminution in value measured by the difference in value of the premises immediately before the accident and immediately after the accident. The District Court further found that the record was wholly lacking as to any evidence concerning the diminution in value to the real estate caused by the accident. Therefore, the court concluded that "L" Investments had failed to establish the fact that the cost of the repairs was less than the diminution in value to the property, and could not recover. The judgment of the municipal court was reversed and the case was dismissed.

As we indicated at the outset, this case presents to the court an opportunity to clarify what should be the rule of law regarding the proper measure of damages to be awarded where injury is caused to an improvement located upon the real estate and the injury can be repaired or the improvement restored. One might anticipate that the answer to that question would be relatively simple. However, an examination of the cases, both within this jurisdiction and elsewhere, discloses that there is some confusion regarding the proper measure of damages.

Dobbs, in his Handbook on the Law of Remedies, observes: "Most courts follow the rule that repair costs, when used as a measure, may not exceed the diminution in value of the property. Several courts have varied this formula by allowing repair or restoration cost to exceed the diminution in the value of the property but limiting such cost to the total pre-tort value of the property. . . . A few courts have allowed recovery for cost of restoration that exceeds the diminished value of the property, or have at

least stated that cost of restoration is the measure without any ceiling." § 5.1 at 317-18 (1973).

An examination of just some of the cases reported discloses that there may in fact be as many as four or five different rules. See, *Hunt v. Chicago, B. & Q. R.R. Co., supra; Jack L. Baker Cos. v. Pasley Mfg. & Distrib. Co.,* 413 S.W.2d 268 (Mo. 1967); *System Fuels, Inc. v. Barnes,* 363 So. 2d 747 (Miss. 1978); *Andersen v. Edwards,* 625 P.2d 282 (Alaska 1981); *Heninger v. Dunn,* 101 Cal. App. 3d 858, 162 Cal. Rptr. 104 (1980); *Huber v. Serpico,* 71 N.J. Super. 329, 176 A.2d 805 (1962); *Samson Co. v. Brusowankin,* 218 Md. 458, 147 A.2d 430 (1958); *Thatcher. v. Const. Co.,* 21 Ohio App. 2d 41, 254 N.E.2d 703 (1970); *Assn. v. Auerbach,* 64 Ohio App. 2d 40, 410 N.E.2d 782 (1979); *Pitts v. Pine Meadow Ranch, Inc.,* 589 P.2d 767 (Utah 1978); *The Rector etc. of St. Christopher's v. C. S. McCrossan, Inc.,* 306 Minn. 143, 235 N.W.2d 609 (1975); *Zwick v. Simpson,* 193 Colo. 36, 572 P.2d 133 (1977); *A.I.D. Insurance Services v. Riley,* 25 Ariz. App. 132, 541 P.2d 595 (1976); *Myers v. Arnold,* 83 Ill. App. 3d 1, 403 N.E.2d 316 (1980); *Lobozzo v. Adam Eidemiller, Aplnt.,* 437 Pa. 360, 263 A.2d 432 (1970); *Conkin v. Ruth,* 581 P.2d 923 (Okla. App. 1976); *Colella v. King County,* 72 Wash. 2d 386, 433 P.2d 154 (1967); *Butler v. Anderson,* 71 Wash. 2d 60, 426 P.2d 467 (1967); *Bd. of Ed. v. Commonwealth, Dept. of Hwys.,* 528 S.W.2d 657 (Ky. 1975); *United States Steel Corp. v. Benefield,* 352 So. 2d 892 (Fla. App. 1977); *General Outdoor Adv. v. LaSalle Rlty.,* 141 Ind. App. 247, 218 N.E.2d 141 (1966); *Moser v. Thorp Sales Corp.,* 312 N.W.2d 881 (Iowa 1981); *Bluemlein v. Szepanski,* 101 Mich. App. 184, 300 N.W.2d 493 (1980).

In 22 Am. Jur. 2d *Damages* § 138 (1965), the author notes: "The underlying theory governing the recovery of damages in those cases in which a building or other structure is injured through the fault of the defendant is the same as that which applies to injuries to real property generally. The basic goal of the

court is compensation—that is, to award such an amount of money as will restore the injured party to the same property status which he occupied immediately prior to the injury. It is not possible, however, to state a single rule of damages which applies invariably to cases of this type. The facts vary from case to case. The building may be unused, it may be a large factory from which profits are derived, it may be located on land belonging to the plaintiff, the building may be owned by the plaintiff but situated on land leased from a third party, or the building may even be separated from the land at the time of the injury. Further, the destruction may be total or it may be easily reparable. A rule of damages which produces compensation in one case may be overcompensation (or undercompensation) in another case. Therefore, several rules of damages have been adopted for injuries to buildings or structures."

Further, in 22 Am. Jur. 2d *Damages* § 135 (1965), the author observes: "It is difficult to state a general rule of damages for tortious injuries to realty when those injuries do not cause permanent damage. This difficulty is caused, in large part, by the variety of temporary injuries which occur. Some injuries can be corrected almost immediately with little resultant loss to the plaintiff. Others can be corrected only with a substantial expenditure of funds and only after a lengthy period of time. Opinions are written for the individual case presented, and the language of the court, although seeking a specific rule of damages, reflects the facts involved and the theories of recovery presented in the particular case. Thus, it is not surprising that opinions state seemingly contradictory rules."

An examination of our own cases discloses that the confusion which has occurred elsewhere may also be found in Nebraska. In *Hunt v. Chicago, B. & Q. R.R. Co.,* 180 Neb. 375, 377, 143 N.W.2d 263, 265 (1966),

relied upon by the District Court, we said: "The general rule as to the measure of damages for injuries to real property is stated in 25 C.J.S., Damages, § 84, p. 920: 'The measure of damages for a permanent injury to real property is usually the (difference between the) fair value of the property immediately before and immediately after the injury. The recovery for a temporary injury to real property is measured by the loss sustained by the owner, and may include the cost of restoration if less than the difference in value, and the diminution in the value of the use and enjoyment or rental value of the property during the time the injury exists.' "

The *Hunt* case relied upon our earlier decisions in *Koyen v. Citizens Nat. Bank,* 107 Neb. 274, 185 N.W. 413 (1921), and *Cattin v. City of Omaha,* 149 Neb. 434, 31 N.W.2d 300 (1948).

In *Koyen, supra* at 275-76, 185 N.W. at 414, we specifically said: "Property such as fences, parts of buildings, and machinery, and furnaces, is capable of being replaced, and the proper measure of damages for the destruction thereof is the cost of restoring or replacing such property. 8 R.C.L. 484, sec. 46. If the property destroyed has no value separate and apart from the realty, the measure of damages for property destroyed is the difference between the value of the real estate before the injury and after the injury. But as to the destruction of property which is a part of the real estate, whose destruction does the realty itself no damage and is capable of being repaired or replaced, the measure is the cost of repairing or restoring the same." It should be noted that there was no mention in *Koyen* regarding diminution in value as a limitation on damages where the property has a separate value and is reparable.

And in *Cattin v. City of Omaha, supra* at 447-49, 31 N.W.2d at 307-08, we said: " 'The measure of damages for injury to, or destruction of, buildings or

other structures is the amount of the loss, which may be the difference in the value of the premises before and after the injury, the value of the building or structure, or, where practicable, the cost of restoration.'

. . . .

" 'Where property, a part of the realty to which it is attached, is destroyed without damage to the realty itself, and where the nature of the thing destroyed is such that it is capable of being replaced at once, and the cost of doing so is capable of reasonable ascertainment, the measure of damages for its negligent destruction is the reasonable cost of replacing the property in like kind and quality.' " Again, no mention was made as to diminution in value as a limitation, although the instruction given by the trial court and approved by us advised the jury that they were to take into account depreciation.

We now believe that regardless of what may have been said by us in the past, we should now attempt to announce a rule which, to the extent possible, removes any confusion in this area. We see little benefit in attempting to fashion a new rule for every specific case as suggested by the author of the American Jurisprudence article. See 22 Am. Jur. 2d *Damages* § 135 (1965). In attempting to choose which of the various rules should be adopted by this court, we must keep in mind the purpose of recovery in tort. In Restatement (Second) of Torts § 901 (1979) the authors explain the general principle embodied in the concept of recovery in tort by saying: "The rules for determining the measure of damages in tort are based upon the purposes for which actions of tort are maintainable. These purposes are: (a) to give compensation, indemnity or restitution for harms; (b) to determine rights; . . . ." Furthermore, in *Davenport v. Intermountain R. L. & P. Co.,* 108 Neb. 387, 393, 187 N.W. 905, 907 (1922), we said:

"The basic principle of the law of damages is that such compensation in money shall be allowed for the loss sustained as will restore the loser to the same value of property status as he occupied just preceding the loss."

In the case of *Schiltz v. Cullen-Schiltz & Assoc., Inc.,* 228 N.W.2d 10, 20-21 (Iowa 1975), the Iowa Supreme Court observed: "[T]he principle underlying allowance of damages is to place the injured party in the same position, so far as money can do it, as he would have been had there been no injury or breach of duty, that is, to compensate him for the injury actually sustained . . . .

. . . .

"Where the injury is such that the premises may be restored to as good condition as it was before, the measure of recovery is the fair and reasonable cost and expense of such restoration."

Limiting the cost of repairs to the diminution in value of the property appears to fly in the face of such pronouncements. The diminution in value may be slight because the injury is slight as compared to the total value of the property, as evidenced by this case. Undoubtedly, the breaking of some bricks and the bending of several windows may not result in reducing the overall value of an old warehouse, still capable of fulfilling its intended function even with broken bricks. Yet, should we therefore excuse the tort-feasor from any liability? Is the owner not entitled to have his building without the broken bricks and windows even though the total value remains unchanged? We think so.

We, therefore, believe that the rule reflected by this court in *Koyen* is indeed the preferable rule and the one which should be followed by this court. We therefore now declare that the proper measure of damages for injury to an improvement upon real estate which can be repaired is as follows: Except as otherwise hereinafter limited, where an improve-

ment upon realty is damaged without damage to the realty itself and where the nature of the thing damaged is such that it is capable of being repaired or restored and the cost of doing so is capable of reasonable ascertainment, the measure of damages for its negligent damage is the reasonable cost of repairing or restoring the property in like kind and quality. This would be in addition to any other consequential damages which the injured party may establish by proper proof.

While certain of the writers, including Dobbs, and perhaps some courts, argue that right of recovery should be without limitation (see Dobbs, Handbook on the Law of Remedies, § 5.1 (1973)), we believe the award for such damage should not exceed the market value of the property immediately preceding the damage to the property. It seems that one ought not to be able to recover a greater amount for partial destruction than one could recover for total destruction. To the extent that our previous decisions on this matter, including *Hunt v. Chicago, B. & Q. R.R. Co.,* 180 Neb. 375, 143 N.W.2d 263 (1966), are to the contrary, they are overruled. If, in fact, the cost of repair or restoration exceeds the market value of the property just before the injury, then the proper measure of damages is the market value of the property just before the damages were incurred, less any salvage.

The burden of establishing the cost of repair shall be upon the party seeking recovery. If the party against whom recovery is sought believes that the cost of repair exceeds the market value of the property just before damage, then the burden shall be upon such party to introduce evidence to establish that fact, and it will then be up to the trier of fact to determine which of the two measures of damages should be employed. Absent evidence that the cost of repair or restoration exceeds the market value of the property just before damage, it will be presumed

that the cost of repair or restoration does not exceed the market value of the property just before damage.

Under the rule now adopted by the court, the record in this case discloses that the evidence adduced was sufficient to entitle "L" Investments to recover for its damages, and the decision of the District Court should be reversed. This is not a reflection on the trial judge who could not have anticipated our action in this case.

Lynch also argues that "L" Investments failed to prove that the cost of repairs were either causally connected to the accident which occurred on September 25, 1977, or were reasonable in amount. We believe that such claims are without merit in light of the record. Both the trial court and the reviewing District Court were apparently of the same opinion.

The judgment of the District Court is reversed and remanded. Appellee is given 20 days in which to request leave to introduce evidence that the cost of the repairs in the amount of $2,640 exceeds the pretort value of the entire improvement. Should appellee desire not to offer such evidence, or upon failing to do so within said 20 days, the District Court is directed to reinstate the judgment of the municipal court.

REVERSED AND REMANDED WITH DIRECTIONS.