THE FIVE J'S, INC., A NEBRASKA CORPORATION, APPELLEE, V.
B & S PROPERTIES, INC., A NEBRASKA
CORPORATION, APPELLANT.

650 N.W.2d 257

Filed September 3, 2002.   No. A-01-357.

Jay A. Ferguson for appellant.

Dennis P. Lee, of Lee, Bucchino & Jones, for appellee.

HANNON, SIEVERS, and MOORE, Judges.

HANNON, Judge.

## INTRODUCTION

This case involves an action for damages brought by The Five J's, Inc. (Purchaser), who purchased real estate and improvements thereon from B & S Properties, Inc. (Seller), on account of alleged misrepresentations made by Seller or its agent, Multi-Vest Realty Company (Agent), that the real estate was free of water seepage problems. Following a bench trial,

the county court entered judgment in favor of Purchaser, and the district court affirmed. Seller's only issue properly raised for consideration by this court is the sufficiency of the evidence in view of the fact that Purchaser introduced evidence only of the cost of repairs but not on the value of the real estate with and without the seepage problems. We conclude that under the facts in this case, Purchaser's proof of the cost of repair was sufficient. We therefore affirm.

## BACKGROUND

On or about August 1, 1997, Seller sold a nine-plex located in Omaha, Nebraska, to Purchaser for $144,000. In April 1999, Purchaser filed a petition in county court seeking damages for the cost of repair made necessary by reason of water seeping into the lower-level apartments of the nine-plex. The suit was based upon the allegations of latent defects, of misrepresentations made by Agent in representing Seller in the sale, and that Purchaser bought the property in reliance on those representations. Damages were sought from Seller and Agent. Agent was dismissed upon a demurrer and is no longer a party to this action. The case ultimately went to a bench trial, and Purchaser obtained a judgment of $7,285.

As will be explained later in the assignments of error section of this opinion, there are no properly assigned errors that were argued and preserved other than the issue of the adequacy of the evidence on damages. We shall therefore not summarize the evidence on the subject of liability.

Purchaser contacted Mark Dorner of Jerry's Basement Waterproofing, Inc., a business that waterproofs basements and structures, to secure an estimate of the cost of repair, but at the time of trial, the repairs had not been accomplished. Dorner's qualification to estimate the cost of repair is not questioned, and therefore, we will summarize neither his testimony on the work which he opined was necessary to eliminate the seepage problem nor the foundation for his testimony on the cost of the necessary repairs. He opined that the cost of repair within a reasonable time after discovery of the defect was $7,285. He also testified that since his inspection in March 1998, no work had been done by his company, and that there would be an increase in cost if the repairs

were done at the time of trial. The trial court rejected evidence on the increase in the cost of repairs due to the repairs' not having been made shortly after discovery.

The trial court's judgment was entered on January 13, 2000. In it, the court made several specific findings to support its conclusion that Seller was liable. Judgment was entered for Purchaser against Seller in the amount of $7,285.

Seller appealed to the district court, alleging that the trial court erred, abused its discretion, and acted contrary to law (1) in failing to dismiss Purchaser's action or in awarding Purchaser judgment in the amount of $7,285 plus court costs and (2) in finding that " 'the value of the real estate has been damaged by the amount of repair required' and/or that 'representations by [Agent] would have caused a reasonable individual to believe that what [Purchaser's] representative had been told were not facts at all.' " The district court affirmed and specifically found that the trial court did not err in drawing the inferences that it did. Seller timely appealed to this court.

## ASSIGNMENTS OF ERROR

Seller alleges that the district court erred in affirming the judgment of the county court and in finding that the county court did not (1) abuse its discretion, (2) err in failing to dismiss the action, (3) enter a judgment contrary to law, and (4) err in drawing inferences in its decisionmaking process.

A generalized and vague assignment of error that does not advise an appellate court of the issue submitted will not be considered. *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000). We find that all of Seller's assignments of error are too broad to inform anyone of the issues it is contesting. The argument contained in Seller's brief spoke only of proof of damages and inquiry notice. Errors argued but not assigned will not be considered on appeal. *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). Furthermore, only issues properly presented to and passed upon by the district court may be raised on appeal to a higher court. *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997). In the argument in its brief, Seller raised the issue of the sufficiency of the evidence on damages to support the verdict in one respect, that is, whether the failure of Purchaser to prove

the decrease in the value of the apartment complex due to the seepage problem made Purchaser's evidence on damages inadequate as a matter of law.

## STANDARD OF REVIEW

In a bench trial of an action at law, the trial court's findings of fact have the effect of a jury verdict and will not be set aside unless clearly wrong. *Henriksen v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002). An appellate court does not reweigh the evidence and considers the judgment in a light most favorable to the successful party, resolving evidentiary conflicts in favor of the successful party and giving that party every reasonable inference deducible from the evidence. *Id.*

On appeal, the fact finder's determination of damages is given great deference, and its action in this respect will not be disturbed if it is supported by evidence and bears a reasonable relationship to the elements of the damages proved. *Eledge v. Farmers Mut. Home Ins.*, 6 Neb. App. 140, 571 N.W.2d 105 (1997).

## ANALYSIS

Seller cites *Flakus v. Schug*, 213 Neb. 491, 329 N.W.2d 859 (1983), *overruled on other grounds, Nielsen v. Adams*, 223 Neb. 262, 388 N.W.2d 840 (1986), for the proposition that where there has been a misrepresentation in the sale of real estate, the measure of damages is the costs of repair not exceeding the difference in value of the property conveyed and the value of the property if it had been as represented. The *Flakus* court stated:

> [P]erhaps a clearer statement of the rule is that where there has been a misrepresentation in the sale of real estate, the measure of damages is the cost of placing the property conveyed in the condition represented, not exceeding the difference in value of the property conveyed and the value of the property if it had been as represented.

213 Neb. at 497, 329 N.W.2d at 864.

The *Flakus* case concerned the correctness of a jury instruction on the issue of damages, where the court instructed that the measure of damages was the difference between the value of the property purchased and its actual value but did not limit recovery to the lesser of the cost of repair or the diminished value. There was

testimony by the purchaser that the property was worth $10,000 less than if it had been as represented. An expert testified that he could not be sure a draintile system would solve the problem, but that such a system would cost $3,458. Other evidence showed the cost of repairing the water damage resulting from the problem to be $1,018. A jury verdict of $3,500 was affirmed because the *Flakus* court concluded that the faulty jury instruction was not prejudicial. Although *Flakus* set forth a rule on the measure of damages in a case involving a misrepresentation in the sale of real estate, its holding does not supply precedent relative to the issue in the instant case.

In this case, the apartment complex sold for $144,000 and the undisputed evidence is that it will cost Purchaser $7,285 to correct the problems for which Seller was legally responsible. Someone is going to have to pay $7,285 to repair the water damage. It is difficult to understand why property such as this apartment complex would not decrease in value by at least as much as it would cost to repair it. In the *Flakus* case, the need for evidence on the decrease in value was solved in the traditional manner, that is, the owner gave his opinion. Such testimony is not always readily available and is often a guess by the owner. It takes no great insight to realize that nonowner testimony of the decrease in the value of such property could be expensive when the property to be valued is an apartment complex. It seems unfair to impose that burden on a purchaser who has been injured by someone's fraud or misrepresentation. We find that cases in other jurisdictions have found a fair solution to the problem, that one Nebraska case adopted a sensible rule in the case of a negligent injury to real estate improvements, and that a similar rule should be applied to this case.

In *Noble v. Mandalin*, 104 Ohio App. 3d 11, 660 N.E.2d 1231 (1995), the seller was legally responsible for a wet basement. To establish damages, the purchaser offered two written estimates to repair the basement and testified that it would cost between $4,800 and $6,500 to fix that area. The trial court ruled against the purchaser because the purchaser did not offer any testimony as to the value of the property with a dry basement as opposed to its value with a wet basement. The *Noble* court quoted *Brewer v. Brothers*, 82 Ohio App. 3d 148, 154, 611 N.E.2d 492,

496 (1992), where that court recognized that Ohio courts have held that the proper measure of damages where there is fraud inducing the purchase of real estate is known as the " 'benefit of the bargain' " rule. The *Brewer* court further stated:

> Courts have also held that the cost of repair or replacement is a fair representation of damages under the benefit of the bargain rule and is a proper method for measuring damages. . . . Given the practical difficulties of establishing the value of the property with and without the defects in these types of cases, we accept the proposition that repair or replacement cost is an adequate measure of damages, particularly given that the goal is to compensate the owner for the loss sustained.

*Id.* The *Noble* court applied the above-stated rule and held that the purchaser was not required to present " 'testimony as to the value of the property with a dry basement as opposed to the value of the property with a wet basement.' " 104 Ohio App. 3d at 14, 660 N.E.2d at 1233.

The Nebraska Supreme Court has applied a similar judicious approach to the cost of repair for negligent damage to real estate. In *"L" Investments, Ltd. v. Lynch*, 212 Neb. 319, 322 N.W.2d 651 (1982), the defendant had struck a building with an automobile. The owner of the building sued to recover the cost of repair, and the trial court had based its decision on the cost of repair. Upon appeal to the district court, that court concluded that the applicable measure of damages was the cost of repair, if less than the diminution in value of the real estate measured by the difference in value of the premises before the accident and immediately after the accident. Since there was no evidence on the diminution of value, the district court reversed the judgment in favor of the plaintiff and dismissed the case. The Nebraska Supreme Court reversed the district court's decision and remanded the cause with a provision allowing the defendant 20 days to introduce evidence that damages determined in the trial exceeded the pretort value of the property.

The *"L" Investments, Ltd.* court recognized that existing case law seemed to support the district court's decision, and it reexamined the reasons for the rule in light of the purpose for recovery in tort. It recognized the situation where an automobile

may damage a building and the building would still have the same value after the tort as before, but stated that the owner of the building should still be entitled to have the damage done by the automobile repaired. It also recognized that an owner of a tortiously damaged building should not be able to recover more when a building is damaged than what that owner could have recovered if that property had been destroyed. After discussing the problems in that area, the court held:

> The burden of establishing the cost of repair shall be upon the party seeking recovery. If the party against whom recovery is sought believes that the cost of repair exceeds the market value of the property just before damage, then the burden shall be upon such party to introduce evidence to establish that fact, and it will then be up to the trier of fact to determine which of the two measures of damages should be employed. Absent evidence that the cost of repair or restoration exceeds the market value of the property just before damage, it will be presumed that the cost of repair or restoration does not exceed the market value of the property just before damage.

212 Neb. at 328-29, 322 N.W.2d at 657.

We realize that *"L" Investments, Ltd.* is distinguishable from the instant case in that it involved a negligent tort, but we see no reason why the same reasoning with respect to damages should not be applied to a case where it has been determined that a seller's misrepresentation entitled a buyer to recover the cost of placing the property purchased into the condition it would have been in if it were as the seller represented it. In such a situation, both buyer and seller have the right to the benefit of their bargain, and therefore, the value of the property if it were as represented is clearly, if not conclusively, established. In the instant case, evidence was adduced that the cost of repairing the nine-plex was $7,285, and it was purchased for $144,000. This is not a situation where the cost of repair was nearly as much as the value of the property. We adopt the reasoning of *"L" Investments, Ltd.* and hold that absent contrary evidence, it can be presumed in this case that the cost of repair does not exceed the property's value. We therefore affirm the court's award of damages representing the cost of repair in the amount of $7,285.

## CONCLUSION

We conclude that under the facts of this case, Purchaser's evidence of the cost to repair the apartment complex, so as to place it in the condition it would have been in absent any misrepresentations, was sufficient to support the court's award of damages.

AFFIRMED.