FABE, Chief Justice,
concurring.
I agree with the court's opinion in almost all respects. But in my view, the award on remand should be limited by the principle that restoration damages will not ordinarily be objectively reasonable if they exceed the total market value of the property before the trespass. I would therefore order a remitti-tur, limiting the amount of compensatory damages to the highest total value for the property given at trial: $40,000.[1]
In Osborne v. Hurst, we relied on the Restatement (Second) of Torts for the proposition that an injured landowner may recover compensatory damages in an amount that either accounts for the diminution in the value of the land caused by the trespass or allows the land to be restored to its pre-trespass condition.[2] We recognized that the court may award restoration costs that exceed diminution of value where there is a reason personal to the owner for restoring the land to the original condition.[3] But we cautioned that these costs must be objectively reasonable in light of the property owner's reason personal for restoring the land and the amount of the land's diminution in value.[4] The reason for this rule is to "reduce the economic waste that occurs when a party incurs repair costs in exeess of the diminished value of the property" and to ensure that the landowner does not enjoy a windfall.[5] In my view, an award of restoration damages that exceeds the total market value of the property before the trespass should not ordinarily be viewed as objectively reasonable because it would result in economic waste and potentially confer on the property owner the "windfall" we warned against in Osborne.[6]
The question in this appeal is whether the $161,000 in restoration costs awarded as compensatory damages was objectively reasonable in light of Harder's reason personal *572 for restoring his property and any diminution in the value of Harder's property as a result of the Wiersums' trespass. I would add to the considered factors the total market value of Harder's property before the trespass and would hold that compensatory damages to restore land based on a reason personal should not ordinarily exceed the total value of the property prior to trespass. And because the compensatory damage award in this case was over four times the total market value of Harder's property before the trespass, the award of restoration damages could not possibly be viewed as objectively reasonable.
Other jurisdictions have limited damages for restoration costs to the total value of the property before the trespass. In Keliges v. VanDermeuien, the Nebraska Supreme Court held that a landowner who intended to use his land for recreational or residential purposes could recover restoration costs but that those costs could not exceed the fair market value of the property before the injury.[7] The landowners in Keitges had bought a 10-acre parcel of unimproved property with the intention of building a house in the future and had used the land for "recreational purposes such as 'nature hikes' with their children.[8] While constructing a fence, a neighbor cut approximately 100 trees and damaged an area "at least 450 feet long and 8 to 10 feet wide" on the landowners' property.[9] The Nebraska Supreme Court held that the proper measure of damages in an action for compensatory damages for destruction of trees and land used for residential or recreational purposes was the cost of reasonable restoration of the landowner's property to its preexisting condition or to a condition as close as reasonably feasible.[10] That court reasoned that "the principle underlying al-lowanee of damages is to place the injured party in the same position, so far as money can do it, as he would have been had there been no injury or breach of duty, that is, to compensate him for the injury actually sustained."[11] - But the Nebraska Supreme Court limited the outside boundary of reasonableness to the property's total value before injury: "[The award for such damage may not exceed the market value of the property immediately preceding the damage." [12]
Similarly, in Vaught v. A.O. Hardee & Sons, Inc., the South Carolina Supreme Court relied on Keitges and our decision in Osborne to hold that a landowner may not recover restoration costs for noncommercial trees and shrubs that exceed the total market value of the property prior to the loss.[13] In Vaught, landowners who used their property for hunting and recreation brought suit against a construction company that negligently set a fire that spread to the landowners' property and burned approximately 21 acres of land and over 1,000 trees.[14] The South Carolina Supreme Court held that the diminution in value of a parcel of property will generally be the proper measure of damages in a case of trespass unless the cost of restoration is less than the amount of diminution, in which case restoration damages may be the proper measure.[15] But where the cost of restoration exceeds the amount of diminution in value, the cost of restoration may be awarded "when the landowner has a personal reason relating to the land for restoring the land to its original condition and when the cost of restoration is reasonable in relation to the damage inflicted."[16] The South Carolina court limited this rule, holding that "the landowner may not recover restoration costs which exceed the market value of the entire parcel prior to the loss." [17]
*573 Applying these principles to this case, the evidence most favorable to Harder indicates that prior to the trespass, Harder's entire property was valued at $40,000. Thus, while I agree with the court's opinion that Harder demonstrated sufficient evidence of a reason personal to award objectively reasonable restoration costs, an award that exceeds the property's total market value of $40,000 is not reasonable under the cireumstances of this case. And the jury's award, which exceeded the value of the entire property by $121,000, is certainly not reasonable.
To avoid the unnecessary expense to the parties of a new trial on damages, I would simply order a remittitur,[18] allowing Harder to choose whether to accept a remittitur of $40,000, the total value of his property prior to the trespass, or to have a new trial on the issue of damages.[19] Harder might prefer a new trial in order to present additional expert testimony on the market value of his property before the trespass because that was not the focus of trial. But I would give Harder the choice between accepting a compensatory award of $40,000, which would be trebled under AS 09.45.7830, or requesting a new trial on damages.
CARPENETI, Justice, with whom WINFREE, Justice, joins, concurring in part and dissenting in part.

. With treble damages under AS 09.45.730, the total award would be $120,000 before the addition of pre- and post-judgment interest and attorney's fees.

. 947 P.2d 1356, 1358-59 (Alaska 1997) (citing RestatemEnt(SEconp) or Torts § 929(1)(a) cmt. b (1977).

. Id. at 1359.

. Id. at 1360.

. 1d.

. - Id. at 1359.

. 240 Neb. 580, 483 N.W.2d 137, 143 (1992).

. Id. at 138-39.

. Id. at 139.

. Id. at 143.

. Id. at 142 (quoting "L" Invs., Ltd. v. Lynch, 212 Neb. 319, 322 N.W.2d 651, 656 (1982)).

. Id. (citing "L" Invs., Ltd., 322 N.W.2d at 656).

. 366 S.C. 475, 623 S$.E.2d 373, 377-78 (2005).

. Id. at 374-75.

. Id. at 377-78.

. Id. at 378.

. Id.

. See Norcon, Inc. v. Kotowski, 971 P.2d 158, 175 (Alaska 1999) ("Where we find an award to be excessive we will vacate the award and may order a remittitur." (citing Sturm, Ruger & Co. v. Day, 615 P.2d 621, 624 (Alaska 1980})); see also Lynden Inc. v. Walker, 30 P.3d 609, 620 (Alaska 2001) (vacating an award of future medical expenses and ordering a remittitur where the jury did not have adequate information before it on which it could have based an award).

. See Lynden, 30 P.3d at 620 n. 63.